## Appeal of McINTOSH & SEYMOUR CORPORATION.

Docket No. 1732.   Submitted June 5, 1925.   Decided October 21, 1925.

1. A taxpayer keeping its books and rendering its returns upon the accrual basis may not deduct from gross income for the calendar year 1918 interest paid in that year which accrued and became a liability during the calendar year 1917.

2. Upon the evidence submitted, *held*, that the actual cash value of property paid in for stock of the taxpayer was not clearly and substantially in excess of the par value of the stock issued therefor.

*Sanford Robinson, Esq.*, for the taxpayer.
*Ellis W. Manning, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This appeal is from the determination of deficiencies in income and profits tax for the calendar years 1918 and 1919 in the amounts of $20,819.22 and $6,570.06, respectively, arising from the disallowance by the Commissioner of a deduction from gross income for the year 1918 in the amount of $8,022.02, claimed on account of interest paid in that year, and the exclusion from invested capital for the years 1918 and 1919 of the amount of $247,917.16, claimed as paid-in surplus.

### FINDINGS OF FACT.

Taxpayer is a New York corporation organized on December 31, 1913, with principal office and place of business at Auburn. For some time after its organization the corporation was engaged in the business of manufacturing reciprocating steam engines and Diesel oil engines. The manufacture of steam engines was, however, never an important part of the business and it was later discontinued. At the present time the corporation manufactures Diesel oil engines and parts for steam engines.

During the years 1916 and 1917 the principal stockholder of the taxpayer advanced to it certain amounts of money for the purpose of enabling it to purchase stock in another corporation, the taxpayer obligating itself to pay interest on the money so advanced. The books of the corporation were kept on the accrual basis and its

income-tax returns were made in accordance therewith. However, the interest which accrued during the year 1917 on the indebtedness mentioned was not entered upon the taxpayer's books until March 31, 1918, at which time an entry was made charging the interest account with the total amount of interest accrued on the indebtedness from January 1, 1917, to March 31, 1918. Thereafter the interest was accrued monthly until November 30, 1918, when the debt and accrued interest, including the interest due for the year 1917, in the amount of $8,022.02, were paid. The amount of interest so paid for the year 1917 was claimed by the taxpayer as a deduction from gross income on its return for the year 1918.

Prior to November 30, 1913, there was in existence a corporation known as the McIntosh & Seymour Co., which was engaged in the manufacture of reciprocating steam engines at Auburn, N. Y. However, at that time the demand for steam engines was decreasing and it was desired by the officers and stockholders of the corporation to manufacture an article for which there was a growing demand. They decided, therefore, since the corporation's plant was suitable for the purpose, to secure, if possible, the necessary patents and capital to manufacture Diesel oil engines. After considerable time and effort the stockholders arranged to secure the Swedish patents covering the Diesel engine and the additional capital necessary for their manufacture. A new corporation, the taxpayer herein, was then incorporated on November 30, 1913, with an authorized capital of $2,200,000, of which $1,100,000 was preferred and $1,100,000 common stock, divided into shares of the par value of $100 each. Preferred stock of the par value of $750,000 was sold for cash at par and the remainder of the preferred stock, of the par value of $350,000, was issued to the McIntosh & Seymour Co. in exchange for its plant and equipment. The common stock was issued for patents, patent rights, and good will—10,000 shares of the par value of $1,000,000 being issued to new interests and 1,000 shares of the par value of $100,000 being issued to the McIntosh & Seymour Co. The stockholders of the old corporation owned only 4,500 shares of the stock of the new corporation out of a total of 22,000 shares outstanding.

About April 30, 1913, an appraisal of the assets of the McIntosh & Seymour Co. was made. This was a detailed inventory appraisal made by personal observation and inspection of each individual item, every item of machinery and equipment in the plant being listed. The appraisal of the buildings was made by the same method as in the case of the machinery and equipment. They were carefully analyzed. Plans were made, and cross sections showing the construction in detail were drafted, on the basis of which a bill of quantities was prepared. Each floor was inventoried, catalogued, priced, and depreciated in detail; all quantities being determined by

inspection and measurement. Prices prevailing in the year 1913 for the machinery and equipment, the materials entering into the building, and labor were obtained from dealers and contractors. Depreciation was determined on the basis of an inspection which took into consideration age and use, failure to make necessary repairs, deferred maintenance, and obsolescence. From all the information thus obtained the appraiser determined that the plant and equipment of the McIntosh & Seymour Co. had a value on that date, based upon the cost of reproduction as of April 30, 1913, less depreciation, of $597,917.16. The plant and equipment in question were carried on the books of the McIntosh & Seymour Co. on November 30, 1913, at $627,776.87.

Upon the basis of the appraisal as of April 30, 1913, the taxpayer claims that the assets acquired by it from the McIntosh & Seymour Co. on December 31, 1913, in exchange for preferred stock of the par value of $350,000, had a fair market value of $597,917.16 on that date, and that it was therefore entitled to a paid-in surplus on account of said assets in the amount of $247,917.16; and in computing its invested capital for the years 1918 and 1919 it included that amount therein. The Commissioner excluded from invested capital the amount so claimed as paid-in surplus and also disallowed the deduction of $8,022.02 claimed for the year 1918 on account of interest paid in that year for the year 1917 as hereinabove set forth, and determined a deficiency in tax in the amount of $20,819.22 for the year 1918 and $6,570.06 for the year 1919.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

LITTLETON: Two questions are presented by this appeal, namely: (1) Is the taxpayer entitled to deduct from gross income for the year 1918 the interest paid by it in that year for the year 1917; and (2) is it entitled to a paid-in surplus on account of the assets purchased by it from the McIntosh & Seymour Co.?

With reference to the first question the evidence shows that during the year 1917 the taxpayer was indebted to its principal stockholder for money borrowed from him on which it was obligated to pay interest. During that year it did not accrue on its books of account the interest due and payable on the money so borrowed, although its books were kept and its income-tax return was rendered on that basis. In the year 1918 it entered on its books of account and paid the interest due for the year 1917. The taxpayer, relying on the case of *Brilliant Coal Co.* v. *United States*, 59 Ct. Cls. 481, contends that

under the Revenue Act of 1917 interest could not be taken as a deduction unless actually paid and that, since the interest in question was not paid in the year 1917, but was paid in the year 1918, the amount thereof is a proper deduction from income in the latter year.

. We are of the opinion that the contention of the taxpayer is not well founded. The facts here are practically identical with the facts in the *Appeal of Tel-Electric Co.*, 1 B. T. A. 434. The evidence in that appeal established that in July, 1914, the Tel-Electric Co. became indebted to one of its stockholders in the amount of $22,-054.50, represented by notes dated July 1, 1914, payable on demand and bearing 6 per cent interest. In 1917 interest on these notes was computed from July 1, 1914, to December 31, 1917, inclusive, in the amount of $4,631.45, and that amount was paid in 1917 and deducted by the taxpayer in its return for the calendar year 1917. During the several calendar years prior to 1917, the taxpayer had not accrued on its books or deducted on its returns any portion of such interest, although its books of account were kept and its returns were rendered on the accrual basis. The Commissioner, upon audit of the taxpayer's return for the calendar year 1917, allowed as a deduction only the interest due for the year 1917, and disallowed as a deduction for the year 1917 the interest due on the indebtedness for the period July 1, 1914, to December 31, 1916, inclusive. This Board in approving the determination of the Commissioner said:

The Board is of the opinion that the interest on the indebtedness of the taxpayer accrued and became a liability in each of the years 1914 to 1917, inclusive, and constituted proper accrual items, and were allowable deductions in those years; therefore, interest which accrued and became a liability in years prior to 1917 can not be deducted from the gross income of 1917. The fact that the interest was not accrued on its books or deducted in its returns for each of the years when liability therefor was incurred can not justify the deduction in the return for the year 1917. When a taxpayer elects to report his income on either the cash receipts and disbursements or the accrual basis he must consistently report his income and deductions on that basis. Otherwise his return would not reflect his true net income. We can find no justification in the law for the deduction in the return for 1917 of the interest which accrued in the years 1914 to 1916, inclusive, when the taxpayer has adopted the accrual method of reporting income.

Taxpayer relies upon the decision of the Court of Claims in the case of the *Brilliant Coal Company* v. *United States*, 59 Ct. Cls. 481, in support of its contention that interest on its indebtedness which accrued in years prior to 1917 is an allowable deduction in the year in which paid. There is nothing in that decision to indicate whether the taxpayer was on a cash receipts or an accrual basis. We are of the opinion that the conclusion reached by the court in that case is not applicable to the case of a corporation taxpayer which keeps its books and reports its income on the accrual basis.

The interest involved in this appeal accrued and became a liability in the year 1917 and was an allowable deduction from the taxpayer's income in that year. It was not, therefore, a proper deduction for

the year 1918. *Appeal of Clarence Schock*, 1 B. T. A. 528; *Appeal of John W. Butler, Inc.*, 1 B. T. A. 1105.

With reference to the second question presented, the taxpayer contends that in the year 1913 it purchased for preferred stock, of the par value of $350,000, certain tangible assets which had at that time a fair market value of $597,917.16, and that, in computing its invested capital for the years 1918 and 1919, it is entitled to include therein the excess of such fair market value over the par value of the stock.

Section 326 of the Revenue Act of 1918 provides:

Sec. 326. (a) That as used in this title the term "invested capital" for any year means * * *

(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, *but in no case* to exceed the par value of the original stock or shares specifically issued therefor, unless the *actual cash value* of such tangible property *at the time paid in* is shown to the satisfaction of the Commissioner to have been *clearly and substantially* in excess of such par value, in which case such excess shall be treated as paid-in surplus; * * *. [Italics ours.]

It is incumbent upon the taxpayer to show that the actual cash value of the assets in question at the time paid in for stock was clearly and substantially in excess of the par value of the stock issued therefor. *Appeal of Sphar Brick Co.*, 2 B. T. A. 946.

The only evidence offered by the taxpayer to support its contention that the assets purchased by it from the McIntosh & Seymour Co. had a value at the time of acquisition greater than the par value of the preferred stock issued therefor was an appraisal of the assets made in April, 1913, which gave to them a value of $597,917.16. It appears that these assets were turned over by the persons interested in the old corporation to a new organization, in which they were to have a beneficial interest of less than 30 per cent. Unless there is attached to the preferred stock rights greater than the rights usually attaching to stock of that kind, which the record fails to show, it would, upon the dissolution of the corporation, be entitled to participate in the assets thereof only to the extent of its face value plus dividends. In other words, the value of the assets in excess of the par value of the preferred stock issued therefor, if such value in fact existed, would inure only to the benefit of the holders of the common stock of the new corporation. It appears from the record that the stockholders of the old corporation were to have only a very small interest in the common stock of the new corporation, and there is nothing to indicate that there were any inducements made to them to turn over the assets in question to the new corporation for a consideration of less than 60 per cent of their real value. So far as the record discloses, it was a transaction at arms' length, involving the

offer and acceptance of a price agreed on by the parties thereto, and we must conclude, in the absence of convincing evidence to the contrary, that the value placed on the assets of the old corporation by the parties to the transaction represented their fair market value at that time. The appraisal appears to have been made on the basis of reproduction cost, less depreciation, to date of appraisal, and while it may be taken as having some probative value it is not conclusive or convincing proof of the cash or fair market value of the property appraised and, unsupported by other evidence, is not sufficient in view of all of the evidence to warrant the Board in setting aside and disregarding the determination of the Commissioner as to the value of the property. The evidence introduced by the taxpayer is, in our opinion, wholly insufficient to establish that the actual cash value of the assets purchased by it from the McIntosh & Seymour Co. was clearly and substantially in excess of the par value of the stock issued therefor, and the determination of the Commissioner is approved.