*Decision will be entered under Rule 50.*

MARY W. T. CONNALLY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60434.  Promulgated July 11, 1935.

*James I. Mason, Esq.*, for the petitioner.
*Samuel L. Young, Esq.*, for the respondent.

OPINION.

TURNER: The principal point contended for by the petitioner is that in no event can any part of the money paid to her for condemned lands be taxed as profit, because all of it represents " compensation for losses sustained ", and, being payment for losses, the proceeds can not be taxed as gains.

From the standpoint of taxable profit, there is no magic in the term " compensation." When applied to awards in condemnation matters, it relates entirely to the value of property at the date of its appropriation to public use, plus any special damages suffered by the owner. It therefore has nothing to do with the cost of the property taken and may represent profit, or actual loss to the owner, depending entirely upon whether its amount is greater or less than his investment in the property.

The petitioner relies chiefly on the decision of the Supreme Court in *United States* v. *Supplee-Biddle Hardware Co.*, 265 U. S. 189. Clearly that case is not in point. The question there was whether the proceeds of certain insurance policies payable to a corporation on the life of one of its officers should be included in gross income. The court held that such proceeds did not constitute income under the statute as then worded and specifically avoided the question as to whether or not Congress, if it so desired, might require the inclusion of such payments in corporate income. Contrasting that situation with the situation here, Congress, in section 112 (f)[1] of the Revenue Act of 1928, has specifically provided for the taxation of profits on

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

\* \* \* \* \* \* \*

(f) *Involuntary conversions.*—If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain or loss shall be recognized. If any part of the money is not so expanded, the gain, if any, shall be recognized, but in an amount not in excess of the money which is not so expended.

property condemned for public uses, and, as we have pointed out in the preceding paragraph, the mere fact that under the law a person is entitled to be indemnified for property at its fair market value as of the date condemned is in no way determinative of the fact as to whether or not there is an actual realization of gain.

The petitioner and the respondent agree that the fair market value of the property on March 1, 1913, is not the proper basis for computing the petitioner's gain from its disposition, but differ as to whether the fair market value on September 10, 1920, when the deed to the property was signed by her sisters and their husbands, or the fair market value on October 20, 1917, the date of her mother's death, is the correct basis for computing the gain. This question is governed by section 113 (a) (5)[2] of the 1928 Act, which fixes the basic date, in such cases, as that of the death of the decedent. Under this provision of the statute the fair market value of the property on October 20, 1917, is the basis for determining the gain realized by the petitioner as a result of the condemnation proceedings.

On the question of land values, a voluminous record made up of depositions and testimony given at the hearing has been produced. Each of the parties called a great number of witnesses. Included among these witnesses were forest rangers familiar with that section of the country, county or city officials, local business men, and other individuals who had some knowledge of the tract of land involved.

Among the witnesses whose depositions were introduced by the petitioner to establish land values were five individuals who served on the condemnation jury in 1927. This jury, having fixed petitioner's award from the city for the taking of the lands, reassembled at her request on August 24, 1931, to determine by retrospective appraisement the fair market value of the lands in September 1920. At their meeting these former jurymen used as a base for their calculations their 1927 award of $182,709.50, which, by a graduated scale of shrinkage, they reduced to what they believed to be a proper level for the year 1920. By such process they decided that $146,167.60 "would be about right" for the lands in the former year.

Briefly stated, the evidence in the case shows quite clearly that the petitioner's property was rough cut-over mountain land and the

---

[2] SEC. 113. BASIS FOR DETERMINING GAIN OR LOSS.

(a) *Property acquired after February 28, 1913.*—The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

\* \* \* \* \* \* \*

(5) PROPERTY TRANSMITTED AT DEATH.— \* \* \* if real property was acquired by general or specific devise or by intestacy, the basis shall be the fair market value of the property at the time of the death of the decedent. \* \* \*

portion suitable for farming was negligible. There was no market or demand for it in 1917 for watershed purposes. In fact, there seems to have been very little demand for such property for any purpose except possibly camp purposes. The possible inclusion of the property as a part of the watershed of the city of Asheville had received no serious consideration, and very likely no consideration at all until the drought of 1925. Since its acquisition by the city of Asheville, its water facilities have not been developed and it does not now appear that they will ever be developed unless and until the population of Asheville materially increases. A great many tracts of cut-over mountain land in the Asheville area had sold at a price ranging from $5 per acre to $12 per acre.

Making due allowance for such agricultural land as the tract contained and such timber, mostly second growth, as remained on the land and its suitability in 1917 for any purposes disclosed by the record, we are convinced that the fair market value of the property on October 20, 1917, was not in excess of $36,531.66. The petitioner has not shown that her gain from the property computed on that amount as the basis was in any way excessive.

Of the $17,388.64 claimed by the petitioner as a deduction, representing fees paid for legal services, the record shows that during the taxable year she did expend a total of $10,000 for legal services in connection with the condemnation proceedings. This item of $10,000 so expended should be applied against the gross amount received by her in computing the gain realized as a result of the condemnation of her property. Cf. *E. A. Giffin,* 19 B. T. A. 1243.

On the remaining issue, affirmatively pleaded by him, the respondent is sustained. It is apparent that in computing the deficiency as originally determined the petitioner's taxable profit was reduced by prorating the amount used in the repurchase of similar lands between the basic cost of the original lands and the tentative profit, computed without regard to the possibility of replacement. This method of computation was proper under section 214 (a) (12) of the Revenue Act of 1921. However, under the provisions of section 112 (f), *supra,* of the Revenue Act of 1928, which governs this case, the only limitation on the recognition of the gain in full is that it may not exceed the amount of money remaining after replacement purchases are made.

*Decision will be entered under Rule 50.*