**PASADENA INVESTMENT COMPANY, a Texas Corporation, Plaintiff,**

v.

**Robert L. PHINNEY, District Director of Internal Revenue, Defendant.**

**Civ. A. No. 12734.**

United States District Court
S. D. Texas,
Houston Division.

Jan. 11, 1963.

John G. Heard, Vinson, Elkins, Weems & Searls, Houston, Tex., for plaintiff.

Woodrow Seals, U. S. Atty., and William M. Ravkind, Dept. of Justice, Fort Worth, Tex., for the United States.

SPEARS, District Judge (by assignment).

The following constitute the Court's findings of fact and conclusions of law in this cause:

### Findings of Fact

1. This suit is for the recovery of income taxes and interest which Plaintiff alleges were erroneously and illegally assessed and collected under the Internal Revenue Laws of the United States. The income taxes and interest which Plaintiff seeks to have refunded were paid by Plaintiff to Defendant, as the District Director of Internal Revenue at Austin, Texas. Jurisdiction is conferred upon this Court by Title 28, United States Code, Section 1340.

2. Plaintiff is a corporation duly organized and existing under the laws of the State of Texas, and has its principal office and place of business in Houston, Texas.

3. Defendant is a resident of Travis County, Texas, and since November 19, 1952, and at all times pertinent to all matters involved in this proceeding, has been the District Director of Internal Revenue at Austin, Texas.

4. This suit was originally filed in the United States District Court for the Western District of Texas, Austin Division, as Civil No. 1051. Upon motion of the Defendant, this action was transferred to this Court by order of United States District Judge Ben H. Rice, Jr. dated July 13, 1959, and assigned Civil No. 12,734 in this Court. Neither Plaintiff nor Defendant raises any venue question but agree for this Court to hear and dispose of this proceeding.

5. This suit is brought by Plaintiff for the recovery of a total amount of $16,877.64, plus interest as provided by law, which $16,877.64 constitutes income and excess profits taxes and interest in the amounts set forth below that were assessed against and collected from the Plaintiff by Defendant as the District Director of Internal Revenue for the

First District of Texas, Austin, Texas, for the taxable fiscal years ended November 30, 1953, and November 30, 1954, as follows:

| Taxable Fiscal Year Ended | Income Taxes | | Total Taxes | Interest |
| | Ordinary | Excess Profits | | |
| --- | --- | --- | --- | --- |
| Nov. 30, 1953 | $ 2,279.31 | $2,549.88 | $ 4,829.18 | $ 814.28 |
| Nov. 30, 1954 | 9,690.35 | 443.16 | 10,133.51 | 1,100.66 |
| | $11,969.66 | $2,993.04 | $14,962.70 | $1,914.94 |

6. In filing its United States corporate income tax returns for the taxable fiscal years ended November 30, 1953, and November 30, 1954, Plaintiff reported thereon and paid income taxes for such years in the amounts of $9,385.88 and $34,725.43, respectively. The former amount was paid on or about January 14, 1954, and the latter amount (which included excess profits tax in the amount of $682.61) was paid in installments as follows: $15,626.44 on or about January 15, 1955, $15,626.44 on or about May 12, 1955, and $3,472.55 on or about July 28, 1955. The Commissioner of Internal Revenue caused the said income tax returns of Plaintiff for such taxable fiscal years to be examined and thereafter determined overassessments and deficiencies in income taxes due by the Plaintiff for such calendar years in the amounts set forth in the table in Paragraph 5 above, in the total amount of $14,962.70 in income taxes and $1,914.94 as interest thereon. These alleged deficiencies in income taxes (ordinary and excess profits) and interest were assessed against and collected from the Plaintiff by Defendant on or about December 13, 1956, in the total amounts of $14,962.70 and $1,914.94, respectively.

7. In filing its return for the taxable fiscal year ended November 30, 1953, the Plaintiff treated as a long-term capital gain the $12,928.00 profit made by it from the sale of .778 of an acre of a tract of 13.008 acres. In filing its return for the taxable fiscal year ended November 30, 1954, the Plaintiff treated as long-term capital gains the $12,932.00 and $10,240.30 profits made by it from the sales of .78 of an acre and .61 of an acre, respectively, of the said tract of 13.008 acres, and the $14,098.30 profit made by it from the sale of .31 of an acre of a tract of 11.04 acres.

8. Thereafter, such tax returns of Plaintiff were subjected to examination by agents of the Internal Revenue Service, and the long-term capital gain treatment of the transactions detailed in Paragraph 7 above, was disallowed on the grounds that such profits constituted ordinary income from property held by Plaintiff primarily for sale to customers in the ordinary course of Plaintiff's trade or business; and the alleged deficiencies were asserted against and collected from Plaintiff by Defendant on or about December 13, 1956, in the amounts and in the manner as specified in Paragraph 5 above.

9. On or about March 26, 1957, Plaintiff filed with Defendant, as the District Director of Internal Revenue, claims for refund of said sums, alleging said sums had been illegally, erroneously, and exclusively collected from the Plaintiff for the taxable fiscal years ended November 30, 1953, and November 30, 1954. These claims were timely and duly filed with Defendant on United States Treasury Department Forms 843 in accordance and in compliance with the applicable provisions of the Internal Revenue Code and the regulations duly promulgated

thereunder by the Secretary of the Treasury, in effect at such time. True copies of the Plaintiff's claims for refund of the income taxes (including excess profits taxes) and interest so filed for the taxable fiscal years ended November 30, 1953, and November 30, 1954, are attached to the Complaint as Exhibits I and II, respectively, and are incorporated herein by this reference. Defendant denies any of the allegations contained in such claims which are not specifically admitted elsewhere in this stipulation.

10. As grounds for said claims for refund, Plaintiff alleged that the entire tracts of land of 13.008 acres and 11.04 acres were held by it for investment purposes; that no part of said tracts was held as inventory or primarily for sale to customers in the ordinary course of any trade or business of Plaintiff; that the sale which occurred during its taxable fiscal year ended November 30, 1953, of .778 of an acre, and that the three sales which occurred during its taxable year ended November 30, 1954, of .78, .61, and .31 acres, all from said tracts of 13.008 and 11.04 acres, were initiated by the purchasers thereof and the Plaintiff did not in any way solicit, advertise, or promote any of said sales; that each of such sales was of a capital asset held by Plaintiff for more than six months prior thereto; and that Plaintiff was correct in reporting the profits from such sales as long-term capital gains.

11. Notices of disallowance of Plaintiff's claims for refund were given by registered mail on February 24, 1958, by the Defendant, by direction of the Commissioner of Internal Revenue. The Complaint was filed before the expiration of two years from the date of the mailing of said notices to the Plaintiff and within three years of the date of payment to Defendant of the taxes and interest herein sought to be recovered by the Plaintiff.

12. Repayment of said amounts has been demanded by Plaintiff, but no part of said sum has been credited, remitted, or repaid in any manner to the Plaintiff.

13. Plaintiff uses the accrual method of accounting for Federal income tax purposes.

14. Plaintiff was organized to develop and sell residential lots to builders. This was done by purchasing raw land suitable for residential purposes, subdividing it into residential lots, improving it with necessary utilities, streets, etc., and then selling these residential lots to builders.

15. On August 10, 1951, a rectangular tract of land of some 65.14 acres was purchased by Plaintiff from Mr. John Campbell, which tract was bisected by Winkler Drive. About a month earlier Plaintiff purchased five contiguous tracts, which were also contiguous to the Campbell tract, from the Holloway-Orr group, totaling some 53.04 acres. This 53.04 acres and the 65.14 acres (total of 118.18 acres) was raw land and was acquired by Plaintiff for a proposed residential subdivision to be called Southmore Plaza. The residential subdivision was to be one whose lots were approved for F.H.A. and/or V.A. type residential financing.

16. However, 11.04 acres and 13.008 acres of the 65.14 acre tract purchased from John Campbell faced on road thoroughfares (Winkler Drive and South Houston—Pasadena Road and Allendale Road) and were not suitable for residential subdivision purposes. Both the difficulty in obtaining F.H.A. and V.A. financing on small residential lots fronting on such thoroughfares and the reluctance of builders to purchase residential lots so situated made these 11.04 acres and 13.008 acres unsuitable for residential subdivision in the opinion of Plaintiff.

17. The remaining portion of the 118.18 acres, or 94.1312 acres, was then platted, subdivided, and improved into residential lots on Southmore Plaza Subdivision and Plaintiff sold the residential lots therein to builders.

18. Later, additional tracts of 9.24 acres and 10 acres, which had been acquired from H. A. Johnson and Mr. Anderson, respectively, were subdivided and improved and sold by the Plaintiff as other sections of Southmore Plaza.

19. The two portions of the tract of land acquired from Mr. Campbell, which were not suitable for development as residential lots, were sometimes referred to for convenience by Plaintiff as follows:

(a) Tract 1 of the Campbell property (or the survey designation of Baldwin Cargill, as used in the Federal income tax returns) being the 13.008 acre tract bordering the north side of Winkler Drive and the west side of South Houston—Pasadena Road, and

(b) Tract 2 of the Campbell property, being a triangular 11.04 acre tract, being on the south side of Winkler Drive and bounded on the east by South Houston—Pasadena Road, on the south by Allendale Road, and on the north by Winkler Drive.

20. Plaintiff, realizing these Tracts 1 and 2 were not suitable for residential lot purposes, acquired such acreage as an investment. The cost of the entire property from Campbell was allocated between the land suitable for residential subdivision and this investment land which was not suited for that purpose. The portion of the purchase price allocated to investment Tract 1 was carried on Plaintiff's books in a separate investment account. The same was done with respect to investment Tract 2. The allocable cost of the 41.0912 acres acquired from Campbell suitable for residential lot purposes was placed in an account designating it for Subdivision purposes and, together with the costs of streets, utilities, and other improvements, went into the cost of the residential lots developed and sold by Plaintiff in Southmore Plaza.

21. Out of investment Tracts 1 and 2, four sales were made during the taxable years ending November 30, 1953, and November 30, 1954. These were:

| Date Sold | Acreage Sold | Out of |
|---|---|---|
| 4–10–53 | .778 of an acre | Tract 1 |
| 5–25–54 | .78 of an acre | Tract 1 |
| 10–21–54 | .61 of an acre | Tract 1 |
| 6–14–54 | .31 of an acre | Tract 2 |

In each of these unsolicited sales, the prospective purchaser or someone acting for him approached Plaintiff with an offer to buy the particular acreage sold.

22. Plaintiff never advertised any part of investment Tracts 1 and 2 for sale and never sought any purchaser for all or any part thereof. Plaintiff never placed any For Sale signs on either of these investment Tracts.

23. Plaintiff reported the gain from each of the four sales referred to in Paragraph 21 above, as a long-term gain from the sale of a capital asset.

24. Plaintiff still has some of Tract 1 and Tract 2 which it acquired in 1951.

25. In contrast, the Plaintiff actively solicited purchasers for the residential lots it held for sale to customers and sold all of its Southmore Plaza residential lots after they were developed and for a good profit.

26. For its year ending November 30, 1953, Plaintiff sold residential lots for the gross amount of some $120,800.00 and had gross sales price of only $14,878.00 from the single sale from investment Tract 1. Similarly, for its year ending November 30, 1954, Plaintiff sold residential lots for the gross amount of some $163,762.16 and had gross sales price of only $41,520.60 from the three sales from investment Tract 2.

Conclusions of Law

1. The Court has jurisdiction of the parties and of the subject matter of this action.

2. During the taxable years before the Court, the property referred to as investment Tracts 1 and 2 were held by Plaintiff as an investment and were not held primarily for sale to customers in

the ordinary course of Plaintiff's trade or business.

3. The gains from the sale of the four tracts in question, namely:

| Sale during Year Ending | Acreage Sold | From Tract No. | Gain |
|---|---|---|---|
| 11–30–53 | .778 | 1 | $12,928.00 |
| 11–30–54 | .78 | 1 | 12,932.00 |
| 11–30–54 | .61 | 1 | 10,240.30 |
| 11–30–54 | .31 | 2 | 14,098.30 |

were properly reported by Plaintiff as long-term capital gains for Federal income tax purposes since each parcel of the acreage sold was a capital asset within the purview of 26 U.S.C. Section 1221 and each had been held for more than six months by Plaintiff prior to sale.

4. Plaintiff is entitled to recover from Defendant the total amount of $16,877.-64, plus interest as provided by law, detailed as follows:

| Taxable Year Ending | Income Taxes | | Total Taxes | Interest |
|---|---|---|---|---|
| | Ordinary | Excess Profits | | |
| 11–30–53 | $ 2,279.31 | $2,549.88 | $ 4,829.19 | $ 814.28 |
| 11–30–54 | 9,690.35 | 443.16 | 10,133.51 | 1,100.66 |
| | $11,969.66 | $2,993.04 | $14,962.70 | $1,914.94 |

and costs of this action.