CASALINA CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6158–70.    Filed August 13, 1973.

*Leon Bizar*, for the petitioner.

*Rufus H. Leonard, Jr.*, for the respondent.

FORRESTER, *Judge:* Respondent determined deficiencies in petitioner's Federal income taxes as follows:

| Taxable year | Amount |
| --- | --- |
| 1966 | $792. 00 |
| 1967 | 40, 835. 81 |
| 1968 | 124, 470. 50 |

The parties have now agreed as to some issues and those remaining for our consideration are:

(1) Whether under section 1033 [1] petitioner is entitled to nonrecognition of gains realized on condemnation awards;

(2) Whether gains realized by petitioner on condemnation awards are taxable as ordinary income or capital gains;

(3) Whether any portion of fees paid to attorneys for services in condemnation proceedings may be allocated to interest allowed on condemnation awards;

(4) Whether interest allowed on condemnation awards made in 1967 and 1968 is accruable and taxable in those years, or over the 15-year period of the condemnation proceedings;

(5) Whether petitioner, an accrual basis taxpayer, having failed to make accruals for interest owed by it on a mortgage may claim these interest deductions when it pays them in later years.

#### FINDINGS OF FACT

### General

Some of the facts have been stipulated and are so found.

Petitioner Casalina Corp. (Casalina) is a South Carolina corporation engaged in the real estate business and with its principal place of business in Conway, S.C. Casalina filed its Federal income tax returns for the taxable years 1966, 1967, and 1968 on the accrual basis with the district director of internal revenue, Columbia, S.C.

---

[1] All statutory references are to the 1954 Internal Revenue Code unless otherwise indicated.

## Issues 1–4. Condemnation Awards

In 1942 Casalina acquired three tracts of undeveloped land on the outer banks of North Carolina for a total cost of $6,600. Tract 217 contained 800 acres and ran from Pamlico Sound to the Atlantic Ocean. Tract 401 consisted of 290 acres on Bodie Island, while tract 333 contained 250 acres near Buxton and Hatteras Island. Casalina held these tracts until they were condemned by the Federal Government in the 1950's. During this period it made no improvements to the tracts and no attempts to sell them.

In 1937, the Congress of the United States had passed legislation for the establishment of Cape Hatteras National Seashore on the outer banks of North Carolina. The area proposed for the park included the three tracts of land purchased by petitioner.

No action was taken to create the park until the early 1950's. At that time highways were constructed by the State of North Carolina which made the Cape Hatteras region more accessible. The National Park Service (the Service) established boundaries and attempted to buy land for the park, including Casalina's three tracts.

Casalina refused the Service's offers to purchase its tracts, and the Service commenced condemnation proceedings in the U.S. District Court, Eastern District of North Carolina. The dates the tracts were condemned and amounts deposited by the Service as its estimate of the fair market values of the properties are as follows:

| Tract | Date condemned | Amounts of deposits in the court |
|-------|---------------|----------------------------------|
| 217   | 6/25/53       | $7,500                           |
| 401   | 5/13/58       | 7,000                            |
| 333   | 3/19/59       | 13,000                           |

During the condemnation proceedings, Casalina made withdrawals from the amounts deposited with the court as follows:

| Tract | Date of withdrawal | Amount  |
|-------|--------------------|---------|
| 217   | 1/15/66            | $6,750  |
| 401   | 10/1/63            | 6,300   |
| 333   | 4/5/61             | 11,700  |

The corporation had unrestricted use of these withdrawn funds. Casalina did not request an extension of time in which to reinvest the proceeds of condemnation awards during this period pursuant to section 1.1033(a)–2(c)(3), Income Tax Regs., because its accountant Charles J. Walheim (Walheim) advised the corporation that it was unnecessary to do so at that time.

Walheim had been an accountant since 1920 and a certified public accountant since 1935.

In 1963 the District Court judge appointed three commissioners to determine the value of Casalina's tracts. The commissioners submitted their reports to the court in 1966. The Service considered the commissioners' valuations excessive and moved that the reports not be accepted by the court. In 1967, the Service abandoned its appeals and the judgments recommended by the commissioners were finalized. The dates the U.S. District Court entered the final judgments, and the amounts thereof are as follows:

| Tract | Judgment date | Amount |
|---|---|---|
| 217 | 1/10/68 | $171, 900. 00 |
| 401 | 6/1/67 | 55, 201. 00 |
| 333 | 1/10/68 | 94, 147. 20 |

On December 23, 1968, Casalina received the amounts of these judgments together with interest in the amount of $229,349.12. The total legal and related expenses incurred by Casalina in the condemnation proceedings was $135,596.20.

Casalina made applications to the proper district director for extensions of time within which to reinvest the condemnation awards on December 13, 1968, as to tract 401, and on December 15, 1969, as to tracts 217 and 333. In both requests it was misrepresented that no gain had been realized on the condemnations prior to the entry of final judgments by the District Court. These requested extensions were granted by the district director.

In 1969 Casalina made investments in real estate in the total amount of about $271,400.

On its 1967 and 1968 Federal income tax returns, Casalina did not report any gains resulting from the condemnation awards. On its 1968 return Casalina prorated the interest income received on the awards to the years 1953 through 1968. Respondent determined that Casalina did not qualify for nonrecognition of gains under section 1033 with respect to the condemnation awards, and that the interest income was taxable entirely in 1967 and 1968.

## Issue 5. Interest Deduction

On August 23, 1953, Casalina purchased 53 acres of real estate near Myrtle Beach, S.C., from its three stockholders for $50,000. It made a cash payment of $7,500 down on this purchase of real estate and gave a mortgage of $42,500 for the balance of the purchase price. Casalina was to make principal payments of $500 semiannually and interest payments of 5 percent on the balance.

Casalina did not make accruals for the interest due on the mortgage,

nor did it make payments of this interest until 1966. Payments of interest were made as follows:

| Year | Amount |
|---|---|
| 1966 | $3,600 |
| 1967 | 6,100 |
| 1968 | 14,400 |

On its Federal income tax returns for the taxable years 1966, 1967, and 1968, Casalina deducted interest payments made on the mortgage during those taxable years.

Respondent disallowed these deductions, on the basis that as an accrual basis taxpayer, Casalina was only entitled to deduct interest expenses accrued during the taxable year.

OPINION

*Issue 1. Recognition of Gains on Involuntary Conversion of Realty*

The initial issue for our decision is whether Casalina should have recognized gains on account of condemnation awards received for the appropriation of its land, or whether under section 1033 it is entitled to defer recognition.

Casalina owned three tracts of land which were condemned by the Federal Government. During the course of the condemnation proceedings the Federal Government made deposits into the District Court and petitioner withdrew portions thereof totaling far more than its bases in the tracts. Final judgments were awarded in 1967 and 1968 and the corporation received payment of these judgments on December 23, 1968.

In 1967 and 1968, Casalina requested and was granted extensions of time within which to reinvest the condemnation awards, representing to the district director that no gains had accrued on the condemnations until the final judgments were entered. Respondent argues that the corporation in fact realized gains at the times it withdrew the deposits from the District Court, and therefore is not entitled to the nonrecognition provisions of 1033.

In order to qualify for nonrecognition of gain on property involuntarily converted into money, reinvestment must occur within the period prescribed by section 1033(a)(3)(B), which at all times pertinent to the instant case provided: [2]

(B) PERIOD WITHIN WHICH PROPERTY MUST BE REPLACED.—The period referred to in subparagraph (A) shall be the period beginning with the date of the disposition of the converted property, or the earliest date of the threat or imminence of requisition or condemnation of the converted property, whichever is the earlier, and ending—

---

[2] In 1969, sec. 1033(a)(3)(B)(i) was amended and now provides that the involuntarily converted property must be replaced within 2 years after the close of the first taxable year in which any gain on the conversion is realized.

(i) one year after the close of the first taxable year in which any part of the gain upon the conversion is realized, or

(ii) subject to such terms and conditions as may be specified by the Secretary or his delegate, at the close of such later date as the Secretary or his delegate may designate on application by the taxpayer. Such application shall be made at such time and in such manner as the Secretary or his delegate may by regulations prescribe.

Casalina withdrew deposits placed by the Federal Government in the District Court as follows:

| Tract | Date of withdrawal | Amount |
| --- | --- | --- |
| 333 | 4/5/61 | $11,700 |
| 401 | 10/1/63 | 6,300 |
| 217 | 1/15/66 | 6,750 |

The total cost bases for the three tracts was $6,600 and absent any evidence to the contrary we must assume it was allocable ratably to the three tracts so that petitioner's basis in tract 401 was far below the $6,300 withdrawn. Also, there is no evidence of record to indicate that Casalina made or accrued any expenditures on the tracts or in the condemnation proceedings prior to the times of the withdrawals which would have increased the tracts' bases to figures equal to or above the amounts withdrawn. It follows that petitioner realized parts of its gains on the dates of the withdrawals.

The withdrawals made by Casalina were not subject to any limitation on their use. Amounts so received under a claim of right and not subject to any limitation on use, are taxable to the taxpayer in the year received even though at the time of receipt conditions exist which might require the taxpayer to return all or part of such sums. *North American Oil* v. *Burnet*, 286 U.S. 417 (1932); *United States* v. *Lewis*, 340 U.S. 590 (1951); *R. A. Stewart & Co.*, 57 T.C. 122 (1971). Thus, Casalina's withdrawals were under a claim of right and resulted in the realization of gains.[3] *R. A. Stewart & Co., supra; North American Oil* v. *Burnet, supra.*

The realization of gains by Casalina started the running of the period within which the corporation had to reinvest the proceeds in order to qualify for nonrecognition treatment under section 1033, but no such investments were made.

Casalina did request and was granted extensions of time to reinvest condemnation proceeds on December 13, 1968, and December 15, 1969. However, in these requests, Casalina not only failed to disclose the

---

[3] The record in the instant case is not sufficiently clear to indicate whether Casalina realized income at the time the deposits were placed with the court. Cf. *Harry D. Aldridge*, 51 T.C. 475 (1968); *Covered Wagon, Inc.* v. *Commissioner*, 369 F.2d 629 (C.A. 8, 1966), affirming, but remanding for computations, a Memorandum Opinion of this Court.

withdrawals it had previously made but stated directly that no gains had been realized until final judgments were entered in 1967 and 1968. Section 1.1033(a)–2(c)(3), Income Tax Regs., requires that such requests shall contain *all* the details in connection with the involuntary conversion.

Respondent determined that petitioner's net gain from tract 401 was realized in 1967 and that its net gains from tracts 217 and 333 were realized in 1968.

By his determination, respondent has refused to apply section 1.1033 (a)–2(c)(3), Income Tax Regs., which provides in pertinent part:

[Late applications for reinvestment extensions shall not be granted] unless the taxpayer can show to the satisfaction of the district director—

(i) reasonable cause for not having filed the application within the required period of time, and

(ii) the filing of such application was made within a reasonable time after the expiration of the required period of time.

The application shall contain all of the details in connection with the involuntary conversion. Such application shall be made to the district director for the internal revenue district in which the return is filed for the first taxable year in which any of the gain from the involuntary conversion is realized. No extension of time shall be granted pursuant to such application unless the taxpayer can show reasonable cause for not being able to replace the converted property within the required period of time.

Casalina argues that under Rev. Rul. 72–27, 1972–1 C.B. 226,[4] it is entitled to the benefits of this regulation. That ruling held that reliance upon the advice of an attorney and an accountant experienced in Federal tax matters is "reasonable cause" within the meaning of the regulation for not filing a timely application. Casalina maintains that it did not file a timely application because its accountant advised that such application was unnecessary. We observe, however, that the taxpayer in the revenue ruling relied on the advice of both an attorney and an accountant, and that the revenue ruling contains an express

---

[4] Rev. Rul. 72–27 :

A taxpayer, relying in good faith on the advice of a reputable accountant and attorney, both of whom were experienced in Federal tax matters and to whom all relevant information had been furnished, that gain had not been realized upon an involuntary conversion of property, failed to acquire replacement property within the period specified in section 1033(a)(3)(B) of the Internal Revenue Code of 1954. Shortly after the expiration of the specified replacement period, however, the taxpayer discovered that gain had, in fact, been realized upon the involuntary conversion and immediately filed an application, pursuant to section 1.1033(a)–2(c)(3) of the Income Tax Regulations, for an extension of the replacement period.

*Held,* the taxpayer's reliance upon the advice in the instant case is "reasonable cause," within the meaning of section 1.1033(a)–2(c)(3) of the regulations, for not having timely filed the application to extend the required replacement period. See Revenue Ruling 172, C.B. 1953–2, 226, which holds that the delinquency penalty under section 291 of the 1939 Code (Section 6651 of the 1954 Code) should not be assessed where failure to file a timely Form 1120H is attributable to reliance in good faith upon the advice of a reputable accountant or attorney, experienced in Federal tax matters, and to whom all relevant information was furnished.

requirement that both be experienced in Federal tax matters. The instant record is silent as to petitioner's advising with any attorney, and the testimony of its accountant indicates that his tax experience was slight.

Section 1033 leaves the matter of an extension to the discretion of the respondent. Accordingly, it is not the prerogative of this Court to grant or deny an extension, but rather we are limited to a determination of whether respondent abused his discretion in denying the extension. *Fort Hamilton Manor, Inc.,* 51 T.C. 707, 721 (1969), affd. 445 F.2d 879 (C.A. 2, 1971); *Boyce* v. *United States,* 405 F.2d 526, 532 (Ct. Cl. 1968). The taxpayer has the heavy burden of proving that respondent's action was plainly arbitrary. *Kolstad* v. *United States,* 276 F. Supp. 757, 761 (D. Mont. 1967).

We find no abuse of discretion in the instant case. Even if Casalina relied on the erroneous advice of its accountant, it did not file applications requesting extensions until several years after the reinvestment period had lapsed.[5] Cf. *James E. Latimer,* 55 T.C. 515 (1970); *Boyce* v. *United States, supra.*

Section 1.1033(a)–2(c)(3)(ii), Income Tax Regs., requires that the application for an extension be filed within a reasonable time after the expiration of the allowed period of time. This was not done, and in addition, Casalina's applications not only failed to state all the details concerning the involuntary conversion, as required by this regulation, but made misstatements of fact.

We therefore hold that Casalina is not entitled to the nonrecognition provisions of section 1033. Accordingly, the gains realized on the condemnation awards, less the 1961, 1963, and 1966 withdrawals, are taxable at the times final judgments were entered by the District Court. *Covered Wagon, Inc.* v. *Commissioner,* 369 F.2d 629, 636–637 (C.A. 8, 1966), affirming, but remanding for computations, a Memorandum Opinion of this Court; *William Justin Petit,* 8 T.C. 228, 233 (1947); *Baltimore & Ohio Railroad Co.,* 29 B.T.A. 368, 373 (1933), affd. 78 F.2d 460 (C.A. 4, 1935).

### Issue 2. Characterization of Condemnation Proceeds

The second issue for our decision is whether gains realized on the condemnation awards are taxable as ordinary income or as capital gains.[6] Respondent argues that the tracts were held for sale to customers in the ordinary course of business, while Casalina contends that they were held for investment.

Unfortunately, the record in the instant case is woefully sparse as to petitioner's various business activities, although it does suggest that

---

[5] The taxpayer in Rev. Rul. 72–27 filed his application "shortly" after the reinvestment period had lapsed.

[6] Casalina admits that the interest awarded on the condemnation judgments is taxable as ordinary income.

it did subdivide and sell some other properties. However, even if we were to assume that petitioner's sole activity was the holding of land for appreciation, respondent would not be aided, for as we have recently held in *William B. Howell*, 57 T.C. 546 (1972), a corporation may hold, as its only property, investment assets. Also cf. *Biedenharn Realty Co.* v. *United States*, 356 F. Supp. 1331 (W.D. La. 1973).

If we assume, on the other hand, that petitioner's ordinary business was the subdivision and sale of properties, this also would not prohibit capital gains treatment of these condemnation gains if these tracts were held as investments. *Eline Realty Co.*, 35 T.C. 1 (1960); *Walter R. Crabtree*, 20 T.C. 841, 846 (1953); *D. G. Bradley*, 26 T.C. 970, 978 (1956); *Pasadena Investment Co.* v. *Phinney*, 223 F. Supp. 639 (S. D. Tex. 1963). Rather the determination of whether the condemned tracts were capital assets held for investments is a question of pure fact which we must resolve on the basis of all the evidence before us. *Cohn* v. *Commissioner*, 226 F. 2d 22, 24 (C.A. 9, 1955); *John D. Riley*, 37 T.C. 932, 938 (1962), affd. 328 F.2d 428 (C.A. 5, 1964). As we stated in *Eline Realty Co.*, *supra* at 5:

It is well established that a dealer in real estate may occupy a dual role: He may be a dealer with reference to some of his properties, and an investor as to others. *Charles E. Mieg*, 32 T.C. 1314, 1321; *D. L. Phillips*, 24 T.C. 435; *Walter R. Crabtree*, 20 T.C. 841; *Nelson A. Farry*, 13 T.C. 8. The characterization of any particular asset as one held for sale or as an investment is a question of fact, which is resolved with the aid of certain well recognized tests, among which are: The intent of the seller with respect to the particular asset in question; the purpose for which the property was acquired, held, and sold; the volume, frequency, continuity and substantiality of the sales; the proximity of sale to purchase; and the extent of sales activity on the part of the seller or his agents. These factors must be viewed in light of all the facts; no single factor is controlling. *W. T. Thrift, Sr.*, 15 T.C. 366; *Boomhower* v. *United States*, 74 F. Supp. 997. Moreover, while the purpose for the acquisition must be given consideration, intent is subject to change, and the determining factor is the purpose for which the property is held at the time of sale. *Carl Marks & Co.*, 12 T.C. 1196; *Richards* v. *Commissioner*, 81 F.2d 369; *Mauldin* v. *Commissioner*, 195 F. 2d 714; *Raymond Bauschard*, 31 T.C. 910, 917, affd. 279 F. 2d 115.

Upon consideration of all the relevant facts in the instant case, we are of the opinion that these tracts were held by Casalina as investment properties. Hewlett Lewis, the secretary-treasurer and one of the three principal owners of petitioner, so testified and we believed him. Furthermore, the relevant objective factors all support his subjective statement.

At the times of these condemnations in 1953, 1958, and 1959, Casalina had owned these tracts for periods of 11, 16, and 17 years. Holding a property for several years indicates an intention to hold for investment rather than sale. *Merchants National Bank of Mobile*, 14 T.C. 1375 (1950), affd. 199 F.2d 657 (C.A. 5, 1952). The tracts had a combined area of 1,340 undeveloped acres and during the entire period

Casalina owned them it made no expenditures or improvements of any kind to the properties. This lack of activity by the owner is another indication of investment intent. *Charles E. Mieg*, 32 T.C. 1314, 1321 (1959); *Scott* v. *United States*, 305 F.2d 460 (Ct. Cl. 1962); cf. *Walter H. Kaltreider*, 28 T.C. 121, 125 (1957), affd. 255 F.2d 833 (C.A. 3, 1958); *Estate of M. A. Collins*, 31 T.C. 238 (1958). Finally, Casalina made no attempt to sell any of the properties prior to the condemnations. This absence of sales activity further vitiates respondent's contention that the tracts were held for sale in the ordinary course of business. *Frieda E. J. Farley*, 7 T.C. 198, 203 (1946).

We resolve this issue for petitioner.

### *Issue 3. Allocation of Legal Expenses*

Casalina contends that the legal and related expenses incurred in the condemnation proceedings should be allocated between the condemnation awards and the interest received thereon. Respondent contends that these expenses are deductible solely from the condemnation awards.

It is now well settled that interest received on a condemnation award is not part of the award, but rather represents compensation for the delay in payment. *Kieselbach* v. *Commissioner*, 317 U.S. 399 (1943). It is also well settled that a property owner's expenses in connection with a condemnation were incurred to increase the award for the loss of its property, and were therefore capital expenditures. *Williams* v. *Burnet*, 59 F.2d 357 (C.A.D.C. 1932); *Isaac G. Johnson & Co.* v. *United States*, 149 F.2d 851 (C.A. 2, 1945).

It follows that the expenses in the instant case were capital and are deductible solely from the condemnation awards. In *William Justin Petit*, 8 T.C. 228, 236–237 (1947), in dealing with this precise question we said:

What petitioner now wants to do is to use only $2,388.50 of the attorney fees in the above manner and then have allowed as a separate deduction $8,878.36 of the attorney fees and thus offset to that extent respondent's addition to petitioner's income of the $17,756.73 interest. There is no warrant in law for this. The attorney fees * * * were for their entire services in the condemnation proceeding and there is no basis for allocating $8,878.36 of the fee for the collection of interest. The entire amount paid the attorneys for their services must be treated as capital expenditures. *Johnson & Co.* v. *United States, supra*. Cf. *Williams* v. *Burnet*, 59 Fed. (2d) 357; *Washington Market Co.*, 25 B.T.A. 576; *Mary W. T. Connally*, 32 B.T.A. 920. Of course, if petitioner's gain from the condemnation award were ordinary income it would make no difference in the tax liability whether petitioner was allowed the deduction of the attorney fees as a capital expenditure in the computation of gain from the sale or whether he was allowed the fees as a business expense deduction. However, petitioner's gain from the condemnation award is taxable as a capital gain and only 50 per cent thereof is taken into account. Therefore, the manner in which these attorney fees are treated does make a difference in petitioner's tax liability. For reasons already stated, petitioner's contention on this point can not be sustained. * * *

These same considerations apply in the instant case and we sustain respondent on this issue.

*Issue 4. Accrual of Interest Over Period of Condemnation*

Casalina received interest in the total amount of $229,349.12 on the condemnation awards. It contends that this interest should be accrued over the 15-year period of the condemnation, while respondent determined that it is only accruable when awarded.

While the right to receive income and not actual receipt is the criterion for income inclusion in gross income for the accrual basis taxpayer, this right must be fixed reasonably in fact and amount. *Baltimore & O. R. Co.* v. *Commissioner*, 78 F.2d 460 (C.A. 4, 1935) ; *Spring City Co.* v. *Commissioner*, 292 U.S. 182 (1934) ; *William Justin Petit*, 8 T.C. 228, 233 (1947). As stated in the *Petit* case (8 T.C. at 233)—

in order for items to be accrued as income the event must occur which determines the amount due. When the amount to be received depends upon a contingency or future events, it is not to be accrued until such contingency or the events have occurred and fixed with reasonable certainty the fact and amount of income. *U.S. Cartridge Co.* v. *United States*, 284 U.S. 511.

In the instant case, both the amount of the awards and the interest thereon were uncertain until the condemnation litigation was concluded and final judgments were entered in 1967 and 1968. We sustain respondent on this issue and hold that the interest was income when awarded by the District Court. *Baltimore & Ohio Railroad Co.*, 29 B.T.A. 368, 373 (1933), affd. 78 F.2d 460 (C.A. 4, 1935) ; *Winter Realty & Construction Co.*, 2 T.C. 38 (1943), modified on appeal on other issues 149 F.2d 567 (C.A. 2, 1945), certiorari denied 326 U.S. 754 (1945) ; *William Justin Petit, supra* at 233.

The record in the instant case is rather confused and the briefs of the parties are similar, however it appears that respondent has determined that $30,269.92 of the interest is taxable in 1967, the year final judgment was entered on tract 401, and that the entire amount of the interest, $229,349.12, is taxable in 1968, the year final judgments were entered on the two remaining tracts and the year in which Casalina received all the money. Such a determination, of course, would be inconsistent and erroneous. We have held that the interest is taxable when awarded by the District Court. Accordingly, the interest on tract 401 is taxable in 1967, and the balance is taxable in 1968. If in fact respondent included the full amount of the interest in 1968, a proper adjustment will be made in the Rule 50 computation.

*Issue 5. Interest Deduction*

In 1953 Casalina gave a mortgage as part of the purchase price for land it acquired from its three shareholders. It made no accruals or

payments of the interest due on the mortgage in the years 1953 through 1965. In the years 1966 through 1968, it made interest payments on the mortgage in the total amount of $24,100, and contends that it is entitled to deduct these interest payments when they were made. In other words, petitioner is asking for the benefits of "cash basis" status in this one instance.

On brief petitioner seems to make a vague argument that there was some sort of a reformation of its contractual obligation to pay this interest which moved the due dates from the earlier years up to 1966, 1967, and 1968. The record fails entirely in this regard. Perhaps the clearest statement of relative fact is the testimony of Hewlett Lewis, "We decided to let the mortgage run on since we didn't want the land back. We knew at some point there would be some money to pay it." It is obvious that this doesn't cut the mustard.

Interest accrues during the taxable year on a fixed and unconditional obligation, and it is deductible as it accrues and not when it is paid if the taxpayer is on the accrual basis. *Miller & Vidor Lumber Co.*, 15 B.T.A. 948 (1929), affd. 39 F.2d 890 (C.A. 5, 1930), certiorari denied 282 U.S. 864 (1930); *Francis R. Hart*, 21 B.T.A. 1001, 1006 (1930). Cf. *Burlington-Rock Island Railroad Co.* v. *United States*, 321 F.2d 817 (C.A. 5, 1963).

In *Miller & Vidor Lumber Co.*, 15 B.T.A. at 949, we said:

> Interest is an expense which accrues ratably over an elapsed period of time. *Cumberland Glass Mfg. Co.*, 2 B.T.A. 1122; *Saner-Ragley Lumber Co.*, 3 B.T.A. 927. A taxpayer on the accrual basis may not deduct from the gross income of any one year interest paid in that year which accrued and became a liability but which was not accrued on its books in a preceding year. *McIntosh & Seymour Corporation*, 2 B.T.A. 953. Interest is deductible as it accrues and not when paid by a taxpayer on the accrual basis. *North Wayne Tool Co.*, 2 B.T.A. 366; *Comstock-Castle Stove Co.*, 4 B.T.A. 114; *Higginbotham-Bailey-Logan Co.*, 8 B.T.A. 566.

In the instant case, Casalina's interest obligation was fixed and definite. It is an accrual basis taxpayer and therefore is entitled to deduct only accrued interest as opposed to interest paid.

*Decision will be entered under Rule 50.*