The **COVERED WAGON, INC.**, Grace D. Ryan, Transferee, Mina Benson, Transferee, Fritz W. Benson, Transferee, Petitioners,

v.

**COMMISSIONER OF INTERNAL REVENUE.**

**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

The **COVERED WAGON, INC.**, Grace D. Ryan, Transferee, Mina Benson, Transferee, Fritz W. Benson, Transferee.

Nos. 18320–18323.

United States Court of Appeals Eighth Circuit.

Dec. 13, 1966.

Jonathan S. Cohen, Atty., Dept. of Justice, Washington, D. C., for the Commissioner of Internal Revenue. Mitchell Rogovin, Asst. Atty. Gen., Tax Division and Lee A. Jackson and David O. Walter, Attys., Tax Div., Dept. of Justice, Washington, D. C., were with him on the brief.

Gordon D. Simons, Minneapolis, Minn., for The Covered Wagon, and another and filed printed brief.

Before VOGEL, Chief Judge, MATTHES, Circuit Judge and DUNCAN, Senior District Judge.

DUNCAN, Senior District Judge.

This case is before the Court on petitions to review the decision of the Tax Court of the United States involving the application of § 337(a) [1] of the Internal Revenue Code of 1954, to the compensation for taking of the corporate petitioner's real property by the United States under Title 40 § 258a [2] U.S.C. The facts

---

[1]. "Section 337(a), I.R.C. of 1954:

"(a) General Rule.—If—

"(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

"(2) within the 12 month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12 month period."

[2]. Section 258a, Title 40, U.S.C.A.

"In any proceeding in any court of the United States outside of the District of Columbia which has been or may be instituted by and in the name of and under the authority of the United States for the acquisition of any land or easement or right of way in land for the public use, the petitioner may file in the cause, with the petition or at any time before judgment, a declaration of taking signed by the authority empowered by law to acquire the lands described in the petition, declaring that said lands are thereby tak-

are not in dispute and were before the Tax Court on stipulation. The principal questions for review by this Court are:

(1) The date of the "sale" within the meaning of the condemnation statute and § 337(a), *supra;*

(2) The date or dates when the capital gains tax resulting from the "sale" of the real estate became due, if the gain therefrom is outside the purview of § 337(a), *supra;*

(3) Whether the liquidation of the corporation was fully concluded within 12 months, as required by the statute;

(4) Whether the tax court erred in denying the taxpayer the deduction for the fiscal year, 1957, for depreciation taken with respect to said property sold in that year for an amount in excess of its adjusted basis.

The taxpayer, Covered Wagon, Inc., a Minnesota corporation, was organized in 1934 and operated a tavern in Minneapolis, Minnesota. In 1956, this taxpayer and eight other property owners were in-

formed by the United States that certain property owned by them in Minneapolis would be acquired as a site for an addition to a federal office building. Subsequently, on July 6, 1956, the Government formally instituted condemnation proceedings in the United States District Court for the District of Minnesota, by duly executing a declaration of taking and depositing in the registry of the District Court the sum of $446,501.00, estimated to be the just compensation for all the condemned property. $200,000.00 of this amount was attributable solely to this taxpayer's real property, which was known as Parcel 8.

On August 7, 1956, the Government filed a Notice of Condemnation, and in response thereto, the corporate taxpayer filed an answer contesting only the amount of compensation which should be received by the corporation.

On January 2, 1957, approximately six months after the taking of the property by the United States, the shareholders of

en for the use of the United States. Said declaration of taking shall contain or have annexed thereto—

"(1) A statement of the authority under which and the public use for which said lands are taken.

(2) A description of the lands taken sufficient for the identification thereof.

(3) A statement of the estate or interest in said lands taken for said public use.

(4) A plan showing the lands taken.

(5) A statement of the sum of money estimated by said acquiring authority to be just compensation for the land taken.

Upon the filing said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title to the said lands in fee simple absolute, or such less estate or interest therein as is specified in said declaration, shall vest in the United States of America, and said lands shall be deemed to be condemned and taken for the use of the United States, and the right to just compensation for the same shall vest in the persons entitled thereto; and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein, and the said judgment shall include, as part of the just compensation awarded,

interest at the rate of 6 per centum per annum on the amount finally awarded as the value of the property as of the date of taking, from said date to the date of payment; but interest shall not be allowed on so much thereof as shall have been paid into the court. No sum so paid into the court shall be charged with commissions or poundage.

"Upon the application of the parties in interest, the court may order that the money deposited in the court, or any part thereof, be paid forthwith for or on account of the just compensation to be awarded in said proceeding. If the compensation finally awarded in respect of said lands, or any parcel thereof, shall exceed the amount of the money so received by any person entitled, the court shall enter judgment against the United States for the amount of the deficiency.

Upon the filing of a declaration of taking, the court shall have power to fix the time within which and the terms upon which the parties in possession shall be required to surrender possession to the petitioner. The court shall have power to make such orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as shall be just and equitable. Feb. 26, 1931, c. 307, § 1, 46 Stat. 1421."

the corporate taxpayer adopted a plan of complete liquidation which provided that the: "transfer of all the property and assets of this corporation shall be completed within one year thereafter or by December 31, 1957."

On January 30, 1957, an appearance, waiver and petition for disbursement of award were filed in the District Court. The Government and the corporate taxpayer agreed to the immediate payment of 90% of the $200,000.00 on deposit, and the District Court ordered the payment of $180,000.00 on January 31, 1957. This amount actually was paid on February 5, 1957.

On April 24, 1957, the value of the condemned property of the petitioner was determined by jury to be $305,500.00. Judgment on the verdict was entered on May 8, 1957, and interest at 6% was added to the award for the period from July 5, 1956, to May 15, 1957. The District Court's judgment in this case provides:

"* * * that upon the filing of the Declaration of Taking on said date, (July 6, 1956) and the deposit into the registry of this court of the sum of $200,000.00 as the estimate of the fair and just compensation for the taking of the land herein condemned, the United States of America was vested with interest and title in full fee simple in and to the lands described therein as Parcel No. 8, a detailed description of which is contained in the Complaint in Condemnation and Declaration of Taking herein."

The period during which interest was to run was later extended to June 26, 1957, and the corporate taxpayer was paid $20,000.00 on May 14, 1957; the final payment of $111,743.40 was made on June 26, 1957.

On September 27, 1957, the shareholders of The Covered Wagon, Inc., duly adopted the following resolution of liquidation:

"BE IT RESOLVED that the corporation be liquidated as of September 30, 1957 and that all property of the corporation, not represented by cash, be transferred to Fritz W. Benson as trustee in liquidation, and that he proceed as soon as practicably possible to convert such assets into cash and to distribute such cash to the former stockholders in proportion to the number of shares owned and cancelled by said stockholders."

Thereafter, certain steps by the corporation were taken to carry out the above proposed resolution. However, liquidation was not completed within the required 12 month period. See discussion infra, (III).

The taxpayer excluded from its income for the years 1956, 1957 and 1958, the gains on the "sale" of its real and personal property. Upon review of the return, the Commissioner ruled that § 337 (a), supra, did not apply to the "sale", and also that the taxpayer had not complied with that section as to the time liquidation should be fully completed. Deficiencies were therefore assessed against the corporation for the fiscal years 1957 and 1958. No deficiency was assessed for fiscal 1956.

In its Memorandum Opinion filed April 5, 1965, and its Supplemental Memorandum Opinion filed May 6, 1965, the Tax Court made the following Findings of Fact and Conclusions of law, which are relevant to the present proceedings:

(1) The Tax Court denied the corporation a claimed deduction for the fiscal year, 1957, for depreciation, taken with respect to certain property sold in that year for an amount in excess of its adjusted basis.

(2) The Tax Court held that the corporation's real estate had been sold in condemnation proceedings in 1956, prior to the adoption of a 12 month plan of liquidation, and, therefore, the gain on this sale was ineligible for the non-recognition treatment provided for in Section 337(a) of the Internal Revenue Code of 1954, and was taxable income.

(3) The Tax Court held that the corporation failed to distribute substantially all of its assets to its share-

holders within 12 months from the date of the adoption of the plan of liquidation, and, therefore, the gain upon the sale of these assets was ineligible for the non-recognition treatment provided for in Section 337(a) of the Internal Revenue Code of 1954.

(4) The Tax Court held that the income representing the gain on the condemnation was taxable in 1957, when the District Court ordered payment of the award, rather than in 1956, when $200,000.00 was deposited with the Court.

Based upon the above findings, the corporation's income tax deficiency for the fiscal year, 1957, was determined to be $61,459.82, of which $33,368.05 has been assessed and paid, leaving a balance due from the transferees of $28,091.77 with interest. For the fiscal year, 1958, an income tax deficiency of $4,414.32 was found, none of which has been assessed or paid, leaving this balance due from the individual transferees.

The corporation and the transferees filed petitions for review of the Tax Court's decision in these matters, on January 4, 1966. Jurisdiction is conferred on this Court by Section 7482 of the Internal Revenue Code of 1954. The issues for review will be discussed in the order presented above.

## I.

■ The Commissioner has conceded, for purposes of this review, that the Tax Court erred in denying the taxpayer a deduction in the fiscal year, 1957, for depreciation, taken with respect to certain property sold in that year for an amount in excess of its adjusted basis.

Subsequent to the Tax Court's decision, in this connection, the United States Supreme Court decided the case of Fribourg Navigation Co. v. Commissioner of Internal Revenue, 383 U.S. 272, 86 S.Ct. 862, 15 L.Ed.2d 751 (Decided March 7, 1966), which expressly allowed a year-of-sale depreciation where the sales price exceeded the asset's adjusted basis. In the present instance, the Commissioner's notice of deficiency denied the claimed deduction because depreciation allowed in prior years had reduced the basis for the assets below reasonable salvage value. (Taxpayer had used a salvage value of zero for these assets.) The Commissioner's position before the Tax Court was that year-of-sale depreciation where sale price exceeded basis could not be allowed as a matter of law. As stated above, the *Fribourg* decision rejected this contention, and is conclusive on this issue, in the present instance.

## II.

■ The principal issue for this court's determination is whether or not the Tax Court was correct in its decision that the acquisition of the corporate real property by condemnation by the United States under the Federal Declaration of Taking Act, supra, constituted a "sale or exchange" within the provisions of § 337 (a) Internal Revenue Code of 1954, at the time the declaration of taking was filed in court and a sum of money deposited to cover the estimated compensation for the acquired property.

■ When the Government has complied with the preliminary requirements of the condemnation statute, insofar as the title to the property is concerned, it vests exclusively in the Government of the United States, and nothing further remains, except to determine the value of the property; this is determined without regard to the right of the Government to absolute ownership and control of the condemned property. Insofar as the Government of the United States and the property owners are concerned, title to the acquired property is as effectively vested in the Government at the completion of the two above preliminary requirements of the statute as if the owners of the property has executed deeds thereto.

■ It is well settled that when property is acquired by the Federal Government in condemnation proceedings, the Federal Declaration of Taking Act (Act of February 26, 1931, c. 307, 46 Stat. 1421 §§ 1–4–40 U.S. 1958 Ed. § ·258a–258d is applicable. Significantly, for our

purpose, § 1 of said Act provides in relevant part that:

"Upon the filing of said declaration of taking and of the deposit in the court * * * of the amount of the estimated compensation stated in said declaration, title to the said lands * * shall be deemed to be condemned and taken for the use of the United States, and the right to just compensation for the same shall vest in the persons entitled thereto * * *."

Thus the statute is clear to the effect that the United States became the owner of the condemned realty on July 6, 1956, when it instituted condemnation proceedings in the United States District Court, by filing its Declaration of Taking and depositing the amount of estimated compensation for the property into the registry of the court. United States v. 1,060.-92 Acres of Land, More or Less, in Miller County, State of Arkansas, 215 F.Supp. 811 (D.C.Ark.1963); United States v. 53¼ Acres of Land, More or Less, in Borough of Brooklyn, 176 F.2d 255 (2 Cir. 1949); United States v. Certain Parcels of Land in Prince Georges County, Md., 40 F.Supp. 436 (D.C.Md.1941).

■ It is the petitioner's contention that the laws of the State of Minnesota are determinative of the question of when title vests in the Government in federal condemnation proceedings. In this connection, it is contended that title does not vest in the Government until an agreement of the parties, or the amount of final compensation for the condemned property has finally been determined, relying on Drake v. City of St. Paul, 65 F.2d 119 (8 Cir. 1933). The *Drake* case held that under the then existing condemnation statute, vesting of title was governed by Minnesota law and did not become effective until payment of the award. It then related back to the date when the Commissioners filed their award.

However, it is clear that the *Drake* case arose under the so-called "Conformity Act" (Act of August 1, 1888 c. 728, 25 Stat. 357) which made state rules of procedure applicable in federal condemnation proceedings. Subsequently, on August 1, 1951, this rule was abrogated by Rule 71 F.R.Civ.P. which made the Federal Rules of Civil Procedure applicable to condemnation proceedings. 6 Nichols, 3 Ed. 1953, c. XXVII § 27.2 pages 291–293.

The Federal Declaration of Taking Act, supra, under which condemnation proceedings in the present case were brought, is a supplemental condemnation statute, permissive in nature, and designed to permit prompt acquisition of title by the United States, pending confirmation proceedings, upon a deposit in court. 6 Nichols, supra at 296. Clearly *Drake* did not involve condemnation proceedings brought under the Federal Declaration of Taking Act, and is not applicable in this proceeding.

There being no question as to the vesting of title at the time of the taking and the depositing in court of the estimated fair value of the acquired realty, the sole question remaining for our disposition, in this connection, is whether or not the vesting of title, in this manner, constitutes a "sale" within the meaning of § 337(a), supra.

■ It is now well settled that § 337(a), supra, applies in a like manner to both voluntary and involuntary conversions. Thus it was stated in Towanda Textiles, Inc. v. United States, 180 F. Supp. 373, 376 (Ct.Cl.1960):

"The taxation of the gain derived from an involuntary conversion of the property into cash during liquidation is clearly contrary to the declared purpose of Congress in enacting the section (337), which was to avoid double taxation incident to the liquidation of a corporation, by exempting the corporation from liability for gain derived from the disposition of its capital assets, irrespective of whether or not certain formalities had been observed. Literally, an involuntary conversion is not a sale but what Congress had in mind was a conversion of a corporation's capital assets into cash, whether voluntary or involuntary, and the distribution of the cash to the stockholders.

It is not conceivable that Congress would have drawn a distinction between a gain from a voluntary conversion and an involuntary one, had the possibility of an involuntary conversion during liquidation come to its attention. The purpose was to exempt the corporation from liability for the tax and to collect the tax from the stockholders alone."

■ There can be no doubt, therefore, that an acquisition of property in condemnation proceedings is a "sale or exchange" within the meaning of § 337(a), supra. Towanda Textiles, Inc. v. United States, supra; Commissioner of Internal Revenue v. Kieselbach, 127 F.2d 359 (3 Cir. 1942), affirmed 317 U.S. 399, 63 S.Ct. 303, 87 L.Ed. 358; Hawaiian Gas Products v. Commissioner of Internal Revenue, 126 F.2d 4 (9 Cir. 1942); Kent Manufacturing Corp. v. Commissioner of Internal Revenue, 288 F.2d 812 (4 Cir. 1961); Wendell v. Commissioner of Internal Revenue, 326 F.2d 660 (2 Cir. 1963); Wood Harmon Corp. v. United States, 206 F.Supp. 773 (S.D.N.Y. 1962); 311 F.2d 918 (2 Cir. 1963); Rev.Rul. 59–108, 1959–1 Cum.Bull. 72.

■ § 337(a), supra, is, however, a special exception to the usual rule that corporate income is taxed at both the corporate and shareholder level. It is a limited exception in that the statute requires that the corporation adopt and carry out a plan of complete liquidation and distribution of its assets within 12 months after the adoption of such a plan, for the section to apply. And, even if that be the case, still the non-recognition of gain treatment, provided for in the section, is applicable only to a "sale or exchange by it of property within such 12 month period". If such a "sale" occurs prior to the adoption of a 12 month plan of liquidation, the gain thus realized is ineligible for the non-recognition of gain treatment provided for in § 337(a), supra, and is taxable income.

■ Our consideration of the applicable law in this area compels our conclusion that the Tax Court was correct in its decision that the "sale" of the corporation's real property, by condemnation, occurred at the time the declaration of taking was filed in court and a deposit made therein to cover estimated compensation for the acquired property, that is, at the time title to the property vested in the United States, under the Federal Declaration of Taking Act, supra. As heretofore stated, this occurred on July 6, 1956, whereas, the corporation's shareholders did not adopt a plan of complete liquidation until January 2, 1957, nearly six months thereafter. Consequently, we hold that the "sale" here in question is outside the purview of § 337(a), supra, and the gain realized therefrom does not qualify for non-recognition treatment under the statute. Driscoll Bros. & Co. v. United States, 221 F.Supp. 603 (N.D. N.Y.1963); Wood Harmon Corp. v. United States, 206 F.Supp. 773 (S.D.N.Y. 1962); affirmed on other grounds, 311 F.2d 918 (2 Cir. 1963); United States v. Certain Property Located in Bor. of Manhattan, 225 F.Supp. 498 (S.D.N.Y.1963); 6 Nichols, Eminent Domain (3d ed. 1953), c. Sec. 27.25(1) A, p. 322; 4 Tiffany, Real Property, (3d ed., 1939), Sec. 1255, pp. 685–686; Rev.Rul. 59–108, 1 Cum.Bull. 72.

### III.

■ The second condition of § 337 (a), supra, that a taxpayer seeking to take advantage of its non-recognition provision must establish, in addition to the requirement that the "sale" be after a resolution to liquidate, is that the proceeds therefrom are completely transferred to the shareholders without undue delay. In this connection, as heretofore stated, the statute provides for a 12 month period after the date of adoption of the plan of liquidation, as the maximum for such distribution. In the present instance, the Tax Court held that The Covered Wagon, Inc., failed to distribute substantially all of its assets to its shareholders within the requisite period, and, therefore, the gain upon the sale of these assets was ineligible for non-recognition treatment under the statute. We feel

that the Tax Court was correct in this determination.

The corporate taxpayer adopted a plan of complete liquidation on January 2, 1957, requiring complete liquidation by December 31, 1957, and on September 27, 1957, the taxpayer's stockholders, in a special meeting, resolved to liquidate the corporation as of September 30, 1957. This resolution directed that all of the corporation's property not represented by cash be transferred to Fritz W. Benson, as trustee in liquidation, and that this property be converted into cash as soon as practicably possible and distributed to the stockholders in proportion to their stock ownership.

The record reveals, however, that the taxpayer failed to liquidate and distribute all of its assets (except amounts reasonably needed to meet creditor claims), during the ensuing 12 month period, ending December 31, 1957, which was required in order to qualify for non-recognition of its gain on the sale of such assets, under § 337(a), supra. See Treasury Regulation on Income Tax (1954 Code), § 1.337–2(b); Alameda Realty Corp. v. Commissioner, 42 T.C. 273 (1964).

In this connection, the record reveals that the taxpayer sold restaurant and kitchen equipment, its trade and good will, to Frank and Corona Rusciano on January 8, 1958. On the same date, application was filed by the taxpayer for transferal of its liquor license to the Ruscianos. Significantly, the bill of sale for these assets was executed on taxpayer's behalf, by Fritz W. Benson, as president of the corporation, not as trustee in liquidation.

In addition, the corporation's general bank account contained $2,239.74 on December 31, 1957, and thereafter, remained open until January 19, 1960, during which period, there occurred numerous deposits and withdrawals. This amount greatly exceeded the amount needed for a reserve for taxes.

In light of the foregoing, it is clear that the Tax Court was correct in its decision that the corporation failed to comply with the second requirement of § 337(a), supra, that is, distribution of substantially all of its assets to its shareholders within 12 months from the date of adoption of the plan of liquidation, and, therefore, the gain upon the "sale" of these assets was ineligible for non-recognition treatment under the statute. Sec. 1.337.2(b), Income Tax Regs.; cf. Mountain Water Co. of La Crescenta, 35 T.C. 418, 428–429 (1960).

IV.

The Tax Court held that the income representing the gain on the condemnation was taxable in 1957, when the District Court ordered payment of the award rather than in 1956, when $200,-000.00 was deposited with the court.

As heretofore stated, the United States deposited $200,000.00 in the registry of the District Court on July 6, 1956, which represented the estimated compensation for the portion of the condemned property attributable to this taxpayer.

On January 30, 1957, the United States and the corporation agreed to the immediate payment of 90% of the $200,-000.00, and the District Court ordered the payment of $180,000.00 on January 31, 1957. This amount actually was paid on February 5, 1957.

On April 24, 1957, the value of the condemned property of the petitioner was determined by a jury to be $305,500.00. Judgment on the verdict was entered on May 8, 1957, and final payment of the award was made on June 26, 1957.

In accordance with our holding that the date of the "sale" for purposes of § 337(a) of the Internal Revenue Code of 1954 is the date that title to the condemned property vests in the United States, even though a fixed price therefor has not yet been decided, it is our determination that the portion of the petitioner's total compensation which was deposited in court on July 6, 1956, and to which it then had an absolute right, is taxable in the year, 1956. It follows that the remainder of petitioner's total award, $105,500.00, is taxable in the year 1957,

the year in which an absolute right to it arose, by virtue of the jury determination. The dates of the actual payment of the award, or portions thereof, are not determinative of the years wherein the award is taxable. United States v. 44.00 Acres of Land, More or Less, Situate in the Town of Greece, 234 F.2d 410, 416 (2 Cir. 1956), cert. den. Odenbach v. United States, 352 U.S. 916, 77 S.Ct. 215, 1 L.Ed. 2d 123; United States v. Miller, 317 U.S. 369, 381, 63 S.Ct. 276, 87 L.Ed. 336 (1943).

The case is remanded to the Tax Court for computation of the amount of the deficiency in accordance with our views as herein expressed.