LINO SCOLARI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Scolari v. Commissioner
Docket No. 5514-71.
United States Tax Court
T.C. Memo 1973-166; 1973 Tax Ct. Memo LEXIS 121; 32 T.C.M. (CCH) 803; T.C.M. (RIA) 73166; July 30, 1973, Filed *121 Held: On the facts presented, petitioner is not entitled to nonrecognition of the gains realized by him in 1966 and 1968 from the condemnation of his property. Thomas Elke, for the petitioner. Joyce Elaine Britt, for the respondent. BRUCE MEMORANDUM FINDINGS OF FACT AND OPINION BRUCE, Judge: Respondent determined deficiencies in petitioner's income taxes for the taxable years ending December 31, 1966, and December 31, 1968, in the respective amounts of $10,240.62 and $18,503.40. Certain adjustments determined by respondent with respect *122 to depreciation 2 deductions and a fire loss claimed by petitioner in 1968 having been conceded and not contested by petitioner, the only issues presented for our determination are: (1) Whether petitioner, an accrual basis taxpayer, realized a gain in 1966 when the United States deposited $65,000 in the Federal Court Registry as estimated compensation for the condemnation of petitioner's farmland, and (2) Whether petitioner complied with the conditions prescribed in section 1033(a) (3) (B) (ii)[1] and the regulations thereunder in order to obtain an extension of time within which to replace the condemned property without recognition of gain. FINDINGS OF FACT Some of the facts have been stipulated and the stipulations of facts and exhibits attached thereto are incorporated by this reference. Lino Scolari (hereinafter sometimes referred to as petitioner) was a single taxpayer at all relevant times herein. At the time of the filing of the petition, he resided at P.O. Box 154, Honda Street, Lompoc, California. 3 Petitioner *123 filed his 1966 individual income tax return with the district director of internal revenue, Los Angeles, California. He filed his 1968 income tax return with the Western Service Center at Ogden, Utah. During the years involved, petitioner consistently reported his income from his farming operation on an accrual basis. On March 1, 1966, the United States filed a complaint in condemnation on real property owned by petitioner in Santa Barbara County, California. The complaint was filed in United States District Court, Southern District of California, Central Division, and concurrently therewith the United States, pursuant to 40 U.S.C. section 258(a) and Rule 71-A of the Rules of Civil Procedure, filed its Declaration of Taking and deposited in the Registry of the Court the amount of $65,000 as estimated compensation. The public uses for which the property was taken were to provide for the establishment of facilities for the use of the Department of the Air Force and for other military uses incident thereto. Petitioner did not contest the taking of the property, but he did pursue the issue of just compensation. 4 Petitioner was the sole party entitled *124 to the $65,000 deposited with the court as estimated compensation. Pursuant to the express terms of 40 U.S.C. section 258(a), no interest was paid by the United States on any part of the $65,000 payment made into the Court Registry on March 1, 1966. On March 26, 1966, petitioner received a United States District Court check in the amount of $62,500 out of the Court Registry as an advance on the total payment of just compensation for the condemnation. Petitioner would have been entitled to receive the entire $65,000; however, he agreed with the United States to leave $2,500 in the registry to cover a possible claim on the land. With the advice of appraisers and attorneys, petitioner contended that the just compensation for the property taken greatly exceeded the estimated compensation. In March of 1968, the United States and petitioner stipulated to a judgment that the amount of $175,000 was the fair, just, and adequate compensation for the property taken. Thereafter, on April 15, 1968, judgment was entered in accordance with the stipulation and on May 29, 1968, petitioner received a United States District Court check in the amount of $112,500 ($62,500 *125 having previously been disbursed to him) in full satisfaction of that judgment. 5 In 1968, petitioner reinvested the entire proceeds received from the condemnation in the purchase of real property in Santa Barbara County, California. Both the property taken and the property purchased by petitioner in 1968 were held by him for productive use in trade or business and for investment. Petitioner's basis for the property condemned by the United States was $15,000. Petitioner incurred and paid legal expenses pertaining to the condemnation in the amount of $41,166.84 in 1968. LeRoy Scolari, nephew of the petitioner, assisted and advised petitioner in matters relating to the condemnation, obtained attorneys to represent him in the condemnation proceedings and attended conferences for petitioner in connection with these proceedings. LeRoy also conferred with the accountant who prepared petitioner's income tax returns, provided him with information relating to the condemnation proceedings and informed him that petitioner wished to reinvest the proceeds from the condemnation. On petitioner's 1966 return, dated February 15, 1967, the accountant reported $50,000 long-term capital *126 gain ($65,000 estimated compensation less $15,000 basis) and entered the following notation: 6 Involuntary conversion - United States Government Condemnation to acquire property. Taxpayer elects to defer reporting of gain to acquire like property. This was the only communication between petitioner and the internal revenue service concerning the fact that petitioner intended to reinvest the condemnation proceeds. Petitioner's 1968 income tax return, dated February 14, 1969, and prepared by the same accountant who prepared the 1966 return, contains the following notation: Involuntary conversion United States Government - Condemnation Award - Tentative Award 1966
$65,000.00
Final Award 1968
110,000.00
Taxpayer elects to apply proceeds to acquire like property - Statement attached - Sch D-1 Schedule D-1 appended to the return contains petitioner's computation of the gain on the condemnation proceeds as follows: Proceeds Invested: - Income Producing Store Building, 3580 Drentt Road, Santa Maria, Calif.
Date Acquired - October 1968
Purchase Price of Property
$225,000.00
Gain above applied
118,833.16
Basis
$106,166.84 7
*127 OPINION Petitioner's farm land was condemned by the United States on March 1, 1966, and on that date the United States deposited $65,000 in the Registry of the Court as estimated compensation. On March 26, 1966, petitioner received a check out of the Registry of the Court in the amount of $62,500, having agreed to leave $2,500 in the Registry to cover a possible claim on the property. The public uses for which the property was taken were to provide for the establishment of facilities for the use of the Air Force and for other military uses incident thereto. Petitioner did not contest the taking of the property, but did question the adequacy of the amount estimated as just compensation and employed attorneys to pursue this issue in the condemnation proceedings before the United States District Court. On April 15, 1968, pursuant to a stipulation between the United States and petitioner, the District Court entered a judgment that $175,000, inclusive of interest, was the fair, just and adequate compensation for the taking of petitioner's property and on May 29, 1968, petitioner received a United States District Court check in the amount of $112,500 ($62,500 having been previously *128 disbursed to him) in full satisfaction of that judgment. In October, 1968, petitioner purchased other property similar or related in service or use to the property converted for $225,000. 8 Petitioner's basis for the property condemned was $15,000 and he incurred and paid legal expenses in connection with the condemnation proceedings in the amount of $41,166.84. Thus, the total gain realized by him from the dondemnation of his property was $118,833.16. Of this amount $50,000 ($65,00 less $15,000 basis) was realized in 1966 and $68,833.16 ($110,000 les $41,166.84 expenses) was realized in 1968. Receipt of the capital gains indicated above was reported on the returns filed by petitioner for 1966 and 1968, but no part of such gains was included in his taxable income for such years. Respondent determined that petitioner realized long-term capital gains in the taxable years 1966 and 1968 and that such gains must be recognized because they did not qualify for nonrecognition treatment under section 1033. [2] Respondent contends 9 that the gains do not qualify for nonrecognition treatment because the proceeds from the conversion were not reinvested within the time prescribed *129 by section 1033 and no extension of the period within which the converted property must be replaced was obtained. *130 10 Petitioner contends that as an accrual basis taxpayer he did not realize any gain in 1966 when the United States deposited $65,000 into the Registry of the Court. His position is that under the accrual method of accounting no amount could be accrued as income until 1968, when for the first time events occurred which fixed with reasonable certainty the amount to be received by him as compensation for the taking of his property, and that the "claim of right doctrine" is not applicable. Thus, he argues that the reinvestment of the proceeds from the condemnation in 1968, the year in which the District Court entered its judgment determining the amount of just compensation for the taking of petitioner's property and the final amount of the award was paid, was within the period prescribed by the statute and, accordingly, that the gain derived from the condemnation should not be recognized. Alternatively, petitioner contends that LeRoy Scolari directed the accountant who prepared his returns to obtain an extension of time for the reinvestment of the proceeds from the condemnation and that the notation on the 1966 return was sufficient to constitute a request for such an extension. *131 Petitioner's contention that as an accrual basis taxpayer he realized no gain from the condemnation until 1968 when the court determined the amount of compensation for the taking of his property, is without merit. 11 On March 1, 1966, when the United States filed its Complaint in Condemnation and Declaration of Taking, and deposited $65,000 in the Registry of the Court as estimated compensation, title to the property involved vested in the United States and petitioner became entitled to the payment of the amount deposited without restriction as to its use. 40 U.S.C., section 258(a); Covered Wagon, Inc. v. Commissioner, 369 F.2d 629, 636 (C.A. 8, 1966), affirming a Memorandum Opinion of this Court (24 T.C.M. 427). Although petitioner withdrew only $62,500 of the amount deposited on March 26, 1966, no other person was named in the condemnation proceedings as a claimant to any part of the proceeds and petitioner's counsel, on opening statement, stipulated that "no one else was entitled to the other amount." Petitioner subsequently received the amount left on deposit along with the additional amount awarded by the court. Neither *132 party has presented any issue with respect to the $2,500 left in the registry on March 26, 1966. Accordingly, we conclude that in 1966 petitioner had a claim of right without restriction as to its use, to the $65,000 estimated compensation deposited in the registry of the court on March 1, 1966. The "claim of right" doctrine was first enunciated by the Supreme Court in North American Oil Consolidated v. Burnet, 286 U.S. 417 (1932), wherein Mr. Justice Brandeis stated: 12 If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the maoney, and even though he may still be adjudged liable to restore its equivalent. * * * In Whitaker v. Commissioner, 269 F.2d 379, 382 (C.A. 5, 1958), affirming 27 T.C. 399 (1966), the court stated: The claim of right doctrine is firmly established in our tax law. [3] If a taxpayer receives earnings under a claim of right, without restriction *133 as to its use, it is taxable income in the taxable year when he receives the earnings. The principle applies even though in a later year he may be required to refund all or part of the money. It applies whether returns are on the cash or accrual basis. Any amount repaid is deductible in the year of repayment (on the cash basis) or the year in which the liability to repay becomes fixed (on the accrual basis). * * * [Footnote omitted; emphasis supplied.] The claim of right doctrine has been applied by this and other courts in numberous cases involving facts similar in many respects to those involved in the present case. In R. A. Stewart & Co., 57 T.C. 122 (1971), the City of New York condemned certain property belonging to an accrual basis taxpayer. An "Involuntary Advance Payment" was made to the taxpayer in 1965 and a final payment was made in 1968. The advance payment was not subject to any limitation or restriction as to its use. The Court rejected the taxpayer's argument that the accrual basis taxpayer did not realize any gain until the full amount of the condemnation award 13 was finally determined and concluded that the taxpayer realized gain in *134 1965 when it received an advance payment which exceeded its basis in the condemned property. See also Town Park Hotel Corp. v. Commissioner, 446 F.2d 878 (C.A. 6, 1971), affirming a Memorandum Opinion of this Court (29 T.C.M. 1150), certiorari denied 404 U.S. 1039; Conlorez Corp., 51 T.C. 467 (1968). Patrick McGuirl, Inc. v. Commissioner, 74 F.2d 729 (C.A. 2, 1935), certiorari denied 295 U.S. 748, relied upon by petitioner, is factually distinguishable. There the taxpayer's property was taken by the City of New York under eminent domain in 1926. A tentative award of compensation was fixed in 1928 and a final decree of award rendered in 1929.Unlike the present case, no amount of compensation was paid to the taxpayer on account of the taking of its property until the final decree in 1929. It was held that the gain thereon was not taxable until 1929. In the course of its discussion the Court of Appeals noted: As a general proposition, where the right to receive money is certain, namely, the liability *135 to pay is unconditional, and books are kept on an accrual basis, the money actually received is considered income as of the year the right to receive it arose and not as of the year when received, even though the amount to be received is not certain as of the year the right to the money accrued. * * * [Emphasis supplied.] Such condition was not present in the McGuirl case but is present in the instant case. 14 Commissioner v. Henry Hess Co., 210 F.2d 553 (C.A.9, 1954), affirming in part and reversing in part 16 T.C. 1363, is likewise distinguishable. In that case the War Shipping Board requisitioned a steamship in 1942 without determination of value and no money was paid to the owner or its successors in interest until 1943. It was held no gain was taxable to the owner or its transferee in 1942. Other cases cited by petitioner without discussion, including United States v. Harmon, 205 F.2d 919 (C.A. 10, 1953); Luckenback Steamship Co., 9 T.C. 662 (1947); General Baking Co., 48 T.C. 201 (1967); and Driscoll Bros. & Co. v. United States, 221 F.Supp 603 (N.D. N.Y., 1963) are also distinguishable. *136 Also, section 446, referred to on brief by petitioner, is not applicable. Respondent's determination was made under section 1033 and not section 446. Having determined that petitioner realized capital gains in 1966 and 1968, from the condemnation of his property, the question remains whether petitioner is entitled to the nonrecognition of such gain under the provisions of section 1033. Section 1033 provides generally for the recognition of gain realized as the result of the involuntary conversion of property. However, if within the prescribed period the taxpayer purchases similar replacement property with the amount realized on the 15 conversion, the taxpayer may elect nonrecognition treatment for his gain. The period for reinvestment, as prescribed by section 1033(a) (3) (B) in effect during the taxable years involved herein, [3] was as follows: SEC. 1033. INVOLUNTARY CONVERSIONS. * * * (B) Period Within Which Property Must Be Replaced. - The period referred to in subparagraph (A) shall be the period beginning with the date of the disposition of the converted property, *137 or the earliest date of the threat or imminence of requisition or condemnation of the converted property, whichever is the earlier, and ending - (i) one year after the close of the first taxable year in which any part of the gain upon the conversion is realized, or (ii) subject to such terms and conditions as may be specified by the Secretary or his delegate, at the close of such later date as the Secretary or his delegate may designate on application by the taxpayer. Such application shall be made at such time and in such manner as the Secretary or his delegate may by regulations prescribe. [Emphasis supplied.] Under subparagraph (b) (i), petitioner had until the close of the taxable year 1967 within which to replace the converted property. Since the replacement property acquired by him was not 16 purchased until 1968, it is clear that he is not entitled to nonrecognition of the gain realized by him from the condemnation of his property under this provision of the statute. Nor, in our opinion, has petitioner established *138 that he is entitled to nonrecognition of such gain under the provisions of subparagraph (b) (ii). Section 1033(a) (3) (B) (ii) provides that the time within which the converted property may be replaced may be extended to such later date as the Secretary or his delegate may designate on application by the taxpayer "made at such time and in such manner as the Secretary or his delegate may by regulations prescribe." Section 1.1033(a)-2(c) (3) of the Income Tax Regulations provides: Such application shall be made prior to the expiration of 2 years (or, in the case of a disposition occurring before Dec. 31, 1969, 1 year) after the close of the first taxable year in which may part of the gain from the conversion is realized, unless the taxpayer can show to the satisfaction of the district director - (i) Reasonable cause for not having filed the application within the required period of time, and a reasonable time after the expiration of the required period of time. The application shall contain all of the details in connection with the involuntary conversion. *139 Such application shall be made to the district director for the internal revenue district in which the return is filed for the first taxable year in which any of the gain from the involuntary conversion is realized. No extension of 17 time shall be granted pursuant to such application unless the taxpayer can show reasonable cause for not being able to replace the converted property within the required period of time. No formal application for an extension of time within which to reinvest the proceeds from the condemnation of his property was ever made by petitioner or on his behalf by LeRoy or his accountant, either prior to the close of 1967 as required by the Regulations, or at any time thereafter. Petitioner contends that LeRoy requested the accountant to secure an extension of time for the reinvestment of the proceeds and that such request is sufficient to extend the period. LeRoy testified that in February, 1967, when the accountant was preparing petitioner's return for 1966, he told the accountant to apply for an extension and that the accountant placed the notation on the 1966 return as the result of his direction. He further testified that June Harvey, a woman agent *140 of the internal revenue service, was present in the office on this occasion auditing the previous year's return, and that the accountant conferred with her about the notation on the return. [4] June 18 Harvey, subsequently produced as a witness on behalf of the respondent, testified that she was not assigned to audit petitioner's returns until August, 1969, and first met LeRoy in September, 1969. She also testified that respondent's records showed that petitioner's 1966 return was audited by Olive Roberts, another woman agent. Although advised that Olive was present in the court room, petitioner did not call her as a witness. More important, neither the accountant nor petitioner was called as a witness by petitioner.LeRoy's testimony was lacking in clarity and positiveness.In the absence of any corroborating testimony, particularly by the accountant, we are not convinced that either LeRoy or petitioner ever specifically requested or instructed the accountant to secure an extension of time for the replacement of the converted property. Moreover, even if such a request had been made of the accountant, it would not, in our opinion, constitute reasonable cause for the failure to *141 file an application for an extension. Under the statute and the regulations promulgated thereunder, it was necessary, not only that the petitioner file an application "in the time and manner" prescribed by the Regulations but that the Secretary or his delegate designate the closing date for the replacement of the converted property. 19 It is also our opinion that the notation on the 1966 return is not of itself sufficient to constitute an application for an extension such as was required by section 1033 and the Regulations. Cf. Town Park Hotel Corp., supra. At most, it was no more than an explanation why the gain realized in 1966 was not being included in petitioner's taxable income for that year. At the time the return was filed, petitioner still had 10-1/2 months within which to acquire replacement *142 property, or, if the condemnation proceedings were not conluded, to file an application for an extension of time to reinvest the proceeds of the condemnation. Not having done either within the time prescribed, we hold that petitioner is not entitled to the nonrecognition of the gains realized by him in 1966 and 1968 from the condemnation of his property. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, effective during the taxable years involved, unless otherwise indicated. ↩
2. That section provides, in part: SEC. 1033. INVOLUNTARY CONVERSIONS. (a) General Rule. - If property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemantion or threat or imminence thereof) is compulsorily or involuntarily converted - * * * (3) Conversion into Money Where Disposition Occurred After 1950. - Into money or into property not similar or related in service or use to the converted property, and the disposition of the converted property (as defined in paragraph (2)) occurred after December 31, 1950, the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph: (A) Nonrecognition of Gain. - If the taxpayer during the period specified in subparagraph (B), for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, * * * at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion (regardless of whether such amount is received in one or more taxable years) exceeds the cost of such other property * * *. Such election shall be made at such time and in such manner as the Secretary or his delegate may by regulations prescribe. * * * * * * (g) Condemnation of Real Property Held for Productive Use in Trade or Business or For Investment. - (1) Special Rule. - For purposes of subsection (a), if real property (not including stock in trade or other property held primarily for sale) held for productive use in trade or business or for investment is (as the result of its seizure, requisition, or condemnation, or threat or imminence thereof) compulsorily or involuntarily converted, property of a like kind to be held either for productive use in trade or business or for investment shall be treated as property similar or related in service or use to the property so converted. * * * ↩
3. Subdivision (a) (3) (B) (i) of section 1033↩ was amended in 1969 by the insertion of "2 years" in lieu of "one year." P.L. 91-172, § 915(a). 4. Petitioner's counsel conceded at the trial that respondent would not be bound by any statement made by his agent on such an occasion. He indicated the testimony was being offered to establish the fact and time when LeRoy requested the accountant to obtain an extension. ↩