T.C. Memo. 1997-304


UNITED STATES TAX COURT


WILLIAM T. SHIPES, JR. AND KATHY D. SHIPES, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18409-95.                          Filed July 1, 1997.


William T Shipes, Jr., & Kathy D. Shipes, pro sese.

<u>Monica J. Howland</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


WRIGHT, <u>Judge</u>:  Respondent determined a deficiency of

$39,393 in petitioners' Federal income tax for taxable year 1991.

We must decide whether section 1033[1] permits the use of multiple

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect during the year at issue, and
all Rule references are to the Tax Court Rules of Practice and
                                        (continued...)

replacement periods in connection with a single condemnation of property.  If we decide that section 1033 permits the use of multiple replacement periods, we must then decide whether petitioners replaced converted property with qualified replacement property.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein.  At the time the petition was filed in this case, petitioners resided in the State of Florida.  Petitioners are husband and wife and filed a joint Federal income tax return for taxable year 1991.

Petitioner-husband (Mr. Shipes) is a nurseryman by occupation.  Sometime during the late 1970's and early 1980's, he purchased 10 acres of real estate located in Orange County, Florida, and began a business thereon in which he grew and sold various types of plants and trees.  In 1984, Mr. Shipes began a citrus nursery (the Nursery) on the above-mentioned land.  The Nursery produced and sold citrus seedlings.  The Nursery's seedlings were never part of the above-mentioned real estate.

On October 25, 1985, as part of an eradication project (the Eradication Project) with the U.S. Department of Agriculture (USDA), the State of Florida Department of Agriculture (SFDA)

[1](...continued)
Procedure.

destroyed Mr. Shipes' entire nursery stock because it was suspected that such stock was infected with a bacterial disease known as citrus canker. As a result of this condemnation, Mr. Shipes received $8,661 (the conversion proceeds) on July 28, 1986.[2]

Petitioners reported the $8,661 in conversion proceeds on their 1986 Federal income tax return. They did not, however, make an election on that return in accordance with section 1033 to defer the gain realized with respect to the conversion proceeds.

Sometime after July 28, 1986, an entity named Mid-Florida Growers, Inc. (MFGI) initiated a lawsuit against SFDA in which it sought additional compensation for the loss it incurred as a result of the Eradication Project. That lawsuit was selected as the test case for nursery owners affected by the Eradication Project and was ultimately decided in MFGI's favor by Florida's Supreme Court. See Department of Agric. & Consumer Servs. v. Mid-Florida Growers, Inc., 521 So. 2d 101 (Fla. 1988). The State of Florida subsequently established an administrative process by which nursery owners affected by the Eradication Project could file claims for additional compensation. Such claims were to be filed with the Office of Citrus Canker Claims (the OCCC). Mr. Shipes filed a claim with the OCCC and received $197,512.08 (the

---

[2] Specifically, the USDA paid Mr. Shipes $6,252, and the SFDA paid him $2,109.

OCCC award) on February 18, 1991, as additional compensation for the destruction of his nursery stock. Of this amount, $81,100.28 was interest and $10,757.73 was reimbursement of legal fees paid. Petitioners included the portion of the OCCC award that constituted interest and reimbursement of legal fees on their 1991 Federal income tax return, but they did not report the remaining $105,654.07 (the additional conversion proceeds). Instead, petitioners attached a statement to their 1991 return which purports to make an election under section 1033 to defer recognition of the gain realized on the receipt of the additional conversion proceeds.

On January 28, 1993, petitioners purchased real estate for $110,000 from Mr. Shipes' mother.

Respondent determined that the additional conversion proceeds do not qualify for nonrecognition under section 1033. A notice of deficiency was issued on June 23, 1995.

## OPINION

As a general rule, gain realized from the sale or other disposition of property must be recognized. Sec. 1001(c). Section 1033 provides an exception to this general rule and allows for nonrecognition of gain realized from certain involuntary conversions of property if an appropriate election is made and, during a specified replacement period and for purposes of replacing the converted property, a taxpayer desiring to defer recognition of such gain purchases other property similar or

related in service or use to the converted property.  Sec. 1033(a)(2)(A).  Under section 1033(a)(2)(A), gain will be recognized only to the extent that the amount realized from the conversion exceeds the cost of the replacement property.  Among other things, an involuntary conversion results when property is condemned by the government.  Sec. 1033(a).

In general, the replacement period under section 1033 begins on the date of the disposition of the converted property, or if earlier, on the date when requisition or condemnation is threatened, and ends 2 years after the close of the first taxable year during which any part of the gain from the conversion is realized.  Sec. 1033(a)(2)(B).  The ending date of the replacement period may be extended if the taxpayer timely files an application with the Commissioner.  Section 1033(a)(2)(B)(ii).

The principal issue in this case is whether section 1033 permits the use of multiple replacement periods in connection with a single condemnation of property by the government.  The parties agree that any replacement period involved in this case began in October 1985.  Petitioners argue, however, that this case requires the use of two replacement periods because conversion proceeds were received on two different dates. Specifically, petitioners maintain that the first replacement period ended on December 31, 1988, and pertained to the portion of the conversion proceeds that Mr. Shipes received on July 28, 1986.  The second replacement period, according to petitioners,

ended on December 31, 1993, and pertained to the additional conversion proceeds that Mr. Shipes received on February 18, 1991.

Respondent disagrees with petitioners' multiple replacement period argument and maintains that section 1033 only authorizes the use of a single replacement period, a period that, in this case, ended on December 31, 1988. We agree with respondent.

Nothing in the Code or the regulations authorizes the use of multiple replacement periods as maintained by petitioners. Similarly, the case law precludes the use of multiple replacement periods as well. Two of the three cases cited by petitioners do not involve the application of section 1033 and lend no support to our analysis of the instant case.[3] The final case cited by petitioners, Conlorez Corp. v. Commissioner, 51 T.C. 467 (1968), is inconsistent with their argument.[4]

---

[3]Neither Patrick McGuirl, Inc. v. Commissioner, 74 F.2d 729 (2d Cir. 1935), nor Covered Wagon, Inc. v. Commissioner, 369 F.2d 629 (8th Cir. 1966) involves sec. 1033. Therefore, neither supports petitioners' argument.

[4]The facts of the instant case are indistinguishable from the facts of Conlorez Corp. v. Commissioner, 51 T.C. 467 (1968). The taxpayer in the Conlorez case had property that was condemned by the government. Shortly thereafter, the government paid the taxpayer an amount that exceeded that taxpayer's basis in the condemned property. Sometime later, more than 2 years following the close of the taxable year during which the government paid the taxpayer the above-mentioned amount, a court awarded the taxpayer an additional amount which the taxpayer subsequently used to replace the condemned property. This Court held that, because the taxpayer realized gain in the taxable year that it received the first payment, and because the purported replacement
(continued...)

Section 1033(a)(2)(B) clearly states the law as follows:

> The * * * [replacement period] shall be the period
> beginning with the date of the disposition of the
> converted property, or the earliest date of the threat
> or imminence of requisition or condemnation of the
> converted property, whichever is the earlier, and
> ending --
>
>> (i) 2 years after the close of the
>> <u>first taxable year</u> in which <u>any</u>
>> <u>part</u> of the gain upon the
>> conversion is realized, or
>>
>> (ii) subject to such terms and
>> conditions as may be specified by
>> the Secretary, at the close of such
>> later date as the Secretary may
>> designate on application by the
>> taxpayer. Such application shall be
>> made at such time and in such
>> manner as the Secretary may by
>> regulations prescribe.  [Emphasis added.]

It is clear from the text of the statute above that in the
absence of an extension by the IRS, the opportunity for deferral
is lost when the replacement period runs beyond 2 years after the
close of the first taxable year during which conversion gain is
realized.  See <u>Stewart & Co. v. Commissioner</u>, 57 T.C. 122 (1971);
<u>Feinberg v. Commissioner</u>, 45 T.C. 635 (1966), affd. 377 F.2d 21
(8th Cir. 1967); see also <u>Conlorez Corp. v. Commissioner</u>, <u>supra</u>.
It is irrelevant that a taxpayer may receive a portion of his or
her condemnation award long after the replacement period has

---

[4](...continued)
property was not purchased within 2 years following the close of
that taxable year, and because the taxpayer did not apply for an
extension of time to replace the condemned property, the taxpayer
<u>did not</u> qualify for nonrecognition of gain under sec. 1033.

expired. The taxpayer has the responsibility to take precautions necessary to prevent loss of the deferral option by requesting an extension as provided in section 1033(a)(2)(B)(ii).

In the instant case, Mr. Shipes first received conversion gain in 1986. He subsequently received additional conversion gain in 1991. Because petitioners did not apply to extend the end date of the replacement period, the replacement period ended on December 31, 1988. Sec. 1033(a)(2)(B). It follows that the additional conversion proceeds were received 2 years and 49 days after the end of the replacement period. Accordingly, petitioners are not entitled to defer recognition of the gain realized from the additional conversion proceeds.[5]

To reflect to foregoing,

<u>Decision will be</u>

<u>entered for respondent.</u>

---

[5]Having found for respondent on the issue of the length of the replacement period, we do not discuss whether the property petitioners purchased in 1993 qualifies as replacement property for purposes of sec. 1033.